IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                              )
NICHOLAS G. BELEZOS, on behalf of          )          CIVIL ACTION NO.
himself and all others similarly situated,      )          1:17-cv-12570
                                                              )
             Plaintiffs,                                    )
v.                                                             )          **COMPLAINT**
                                                              )
BOARD OF SELECTMEN of                      )          **(CLASS ACTION)**
Hingham, Massachusetts,                          )
in their official capacity,                           )          **DEMAND FOR JURY TRIAL**
on behalf of themselves and                      )
all others similarly situated,                      )
                                                              )
             Defendants                                 )
_____ )

**INTRODUCTION**

1.      Plaintiff Nicholas G. Belezos, individually and on behalf of himself and a

class of all other persons similarly situated, brings this civil class action for declaratory,

legal, equitable and other relief pursuant to the Fourteenth Amendment to the United

States Constitution as secured by 42 U.S.C. § 1983, and under the statutes and regulations

of the Commonwealth of Massachusetts – including Mass. Gen. L. ch. 90, § 18 (and set

forth in Mass. Gen. L. ch. 85, § 2), Mass. Gen. L. ch. 90, § 17, "Procedures for Speed

Zoning on State and Municipal Roads" (Massachusetts Highway Department, 2005), and

"The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control

Devices," § 10A-8 (January 2012) - against the Board of Selectmen of Hingham,

Massachusetts, in their official capacity, on behalf of themselves and a class of all others

similarly situated.

**JURISDICTION**

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201. Federal question jurisdiction arises pursuant to 42 U.S.C. § 1983.  This complaint also alleges statutory and regulatory violations of the Commonwealth of Massachusetts. Supplemental jurisdiction arises pursuant to 28 U.S.C. § 1367, and the principals of supplemental jurisdiction.  The federal and state law claims arise out of a common nucleus of operative facts, and the entire suit commenced by this complaint would ordinarily be tried in one judicial proceeding.  The exercise of supplemental jurisdiction will avoid duplication and multiplicity of action, and will promote the interests of judicial economy and fairness.

**VENUE**

3.      Venue is proper in this Court based upon 28 U.S.C § 1391, in that a substantial part of the events or omissions giving rise to the claims occurred in this district as alleged below.  In addition, the Defendant Board of Selectmen of Hingham, Massachusetts, maintains its principal place of business in this district.

**PARTIES**

4.      Plaintiff Nicholas G. Belezos (hereinafter "Mr. Belezos"), is an individual residing at all relevant times at 2 Puritan Road, Hingham, Plymouth County, Massachusetts 02043.

5.      Defendant Board of Selectmen (hereinafter "Selectmen") of Hingham, Massachusetts (hereinafter "Town" or "Hingham"), are the Chief Elected and Executive

2

Officers of the Town, having their principal office at 210 Central Street, Hingham, Plymouth County, Massachusetts 02043.  The Town is a municipal corporation organized under the laws of the Commonwealth of Massachusetts.  The Selectmen are vested with all the municipal authority not specifically retained by the Town's legislative body, Town Meeting, or other elected boards.  The Selectmen adopt Town administrative policies, make special regulations as to the speed of motor vehicles, and act as Police Commissioner.  They appoint and supervise the Town Administrator, the Superintendent of Public Works and the Chief of Police.  The Selectmen are hereby sued in their official capacity for declaratory, legal, equitable and other relief.

6.    The Town of Hingham Department of Public Works ("DPW") is a department of the Town, and is responsible for the care and upkeep of the Town's public roads and unaccepted subdivisions, and installs, repairs, and maintains the Town's traffic and speed limit signs.

7.    The Town of Hingham Police Department ("Police Department") is a department of the Town, and is responsible for law enforcement and maintaining public safety, and enforces the Town By-Laws and regulations, including motor vehicle speed limits.

## BACKGROUND

8.    Mass. Gen. L. ch. 90, § 18, as amended through St. 1986, c. 689, §§ 8-9, entitled "Special regulations, speed and use of vehicles," is the enabling statute that authorizes the Board of Selectmen to "make special regulations as to the speed of motor vehicles" on ways within their control, i.e., speed limits.  It provides in pertinent part:

3

> The city council, the transportation commission of the city of Boston, the board of selectmen, park commissioners, a traffic commission or traffic director, or the department, on ways within their control, may make special regulations as to the speed of motor vehicles ....

Mass. Gen. L. ch. 90, § 18.

9.      Mass. Gen. L. ch. 90, § 18, is a statute of long-standing, having been enacted shortly after motor vehicles had begun to come into use, and at a time when they were frowned upon in many localities.  The statute has always contained provisions subjecting action taken under it to some degree of control by a State board.  It provides in pertinent part:

> [n]o such special regulation shall be effective ... until after, and in the case of a special speed regulation the department and the registrar, acting jointly, shall have certified in writing that such regulation is consistent with the public interests ....

Mass. Gen. L. ch. 90, § 18 (emphasis added).

> ... No such regulation shall be effective until there shall have been erected, upon the ways affected thereby and at such points as the department and the registrar, acting jointly, may designate, signs, conforming to standards adopted by the department, setting forth the speed or other restrictions established by the regulation, and then only during the time such signs are in place.

Id. (emphasis added).

10.     The Commonwealth of Massachusetts Department of Transportation (hereinafter "MassDOT") has a Policy on Speed Zoning that states what "is consistent with the public interests" in accordance with the provisions of Mass. Gen. L. ch. 90, § 18:

> The goal of our Speed Limit Traffic Control Program has always been to provide appropriate and enforceable speed limits on all paved streets and highways within the Commonwealth in the best interest of the motoring public's right to use a roadway in a reasonable and proper manner.  The ideal speed limit is both acceptable to the prudent driver and enforceable by our police departments.

4

MassDOT Highway Division, Speed Limit Regulations (2009) (emphasis added).

11.    Mass.  Gen. L. ch. 85, § 2, as amended through St. 1986, c. 689, § 3, entitled "Traffic signs or devices; erection and maintenance; rules and regulations," is the enabling statute that confers the authority upon both the Department of Transportation ("Department") and cities or towns to erect and maintain traffic signs or devices.  It notes that "speed control signs may be established only in accordance with the provisions of section eighteen of chapter ninety."  Id.  It also expressly authorizes cities and towns to erect and maintain traffic signs or devices "on any way within its control" without the approval of the Department "provided such signs ... are in conformance with the department's current manual on uniform traffic control devices...".  Id.

12.    In accordance with the authority granted by Mass. Gen. L. ch. 90, § 18, and Mass. Gen. L. ch. 85, § 2, the Highway Division of MassDOT (hereinafter "MassHwy") promulgated the "Procedures for Speed Zoning on State and Municipal Roads" (2005) to regulate the posting of speed limits for motor vehicles in the Commonwealth.  It plainly states the regulatory procedure to be followed, and succinctly provides in pertinent part:

> Chapter 90, Section 18 authorizes the posting of numerical speed limits on all roadways in Massachusetts.  The foundation for the actual posting of a speed limit is a thorough traffic engineering study.  After a study has been completed, a Special Speed Regulation is drafted and approved by the governing authority of the roadway, the Registry of Motor Vehicles and MassHighway.  All posted regulatory speed limit signs must adhere to this approval process.  *If a speed limit is posted without this procedure, it is in violation of Chapter 90, Section 18, and is therefore considered illegal and unenforceable*.

Massachusetts Highway Department Procedures for Speed Zoning on State and Municipal Roads, 3 (2005) (emphasis added).

> The **85th percentile** speed of vehicles passing a given point is the speed at or below which 85 percent of the vehicles passing the point are travelling. This is the principle value used for establishing speed controls. *__This method assumes that the majority of motorists are prudent and capable of selecting safe speeds__*; therefore, speeds established in this manner meet the legal requirement that they be "reasonable and proper."

Id. at 14 (emphasis added).

> Studies have shown that speed zoning has very little permanent effect on average vehicular speeds. ... The principle benefit of properly established speed zoning is to provide a means for police officers to apply enforcement to those who do not conform to speeds considered reasonable and proper by the majority of the motoring public. Public opinion will be on the side of the police who are enforcing a reasonable maximum speed. *__The former federally mandated 55 miles per hour national speed limit__* on the Interstate System clearly *__shows that an unreasonable low speed limit is neither enforceable nor has the long term support of the general public__*.

Id. at 29-30 (emphasis added).

13. In accordance with the authority granted by Mass. Gen. L. ch. 85, § 2, MassHwy promulgated the "The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices," § 10A-8 (January 2012), to regulate the posting of speed limits for motor vehicles in the Commonwealth. It plainly states the regulatory procedure to be followed, and succinctly provides in pertinent part:

> **Section 10A-8** **Speed Control**: Of the special regulations adopted by municipalities under the provisions of Chapter 90, Section 18 of the General Laws, the most commonly used is the special regulation of the speed of motor vehicles. Considerable data including speed observations and trial runs must be obtained by municipal officials, usually the Police Department. The final determination is based upon the 85-percentile method, which is that speed at or below which 85% of the vehicles observed were actually traveling. Department representatives are available to demonstrate the proper method for conducting the necessary studies and drafting the covering regulation, upon written request of local officials.
>
> Procedure for Establishment of Legal Speed Zones

(1) The municipality is to conduct proper studies and submit data to the Department. (Municipalities usually accept the available services of the Department in conducting studies and assembling the data).

(2) After the speed zones, proposed by the local authorities, are reviewed by the Department, they are returned to the municipality for formal adoption by the rule-making body. During this time, the municipality is responsible for any and all hearings required for adoption.

(3) Upon receipt of notice of formal adoption by the municipality, the Department, acting jointly with the Registry, will certify and approve.

(4) Certified regulation is returned to municipality.

(5) Official Speed Limit signs may then be installed in accordance with the specific provisions of the approved speed regulation.

(6) The Special Speed Regulation is then enforceable against violators.

"The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices," § 10A-8, 10-11 (January 2012).

14.     Federal Highway Administration research confirms MassHwy's observations regarding the "very little permanent effect" of posted speed limits on average vehicular speeds: "State or local officials often receive citizen requests for speed limit reductions because of perceived excessive speeds. However, research has repeatedly shown that changes in posted speeds have little effect on operating speeds." Parker, M.R., "Synthesis of Speed Zoning Practices," Report No. FHWA/RD-85/096 (1985).

15.     The Federal Highway Administration also observes that there exists no established scientific correlation between motor vehicle speed and crash rates, when it states "the relationship between speed and safety is complicated and unclear. There are very few points of consensus on the effects of [motor vehicle] speed on crash

probability."   U.S. Dept. of Transportation, Fed. Hwy. Admin., "Speed Concepts: Informational Guide," 1 (Sept. 2009).

16.    Mass. Gen. L. ch. 90, § 17, as amended through St. 1986, c. 689, § 7, entitled "Speed Limits," defines the statutory offense of "Speeding."   It provides in pertinent part:

> [1] No person operating a motor vehicle on any way shall run it at a rate of speed greater than is reasonable and proper, having regard to traffic and the use of the way and the safety of the public. [2] Unless a way is otherwise posted in accordance with the provisions of section eighteen [proviso], it shall be prima facie evidence of a rate of speed greater than is reasonable and proper as aforesaid (1) if a motor vehicle is operated on a divided highway outside a thickly settled or business district at a rate of speed exceeding fifty miles per hour for a distance of a quarter of a mile, or (2) on any other way outside a thickly settled or business district at a rate of speed exceeding forty miles per hour for a distance of a quarter of a mile, or (3) inside a thickly settled or business district at a rate of speed exceeding thirty miles per hour for a distance of one-eighth of a mile, or (4) within a school zone which may be established by a city or town as provided in section two of chapter eighty-five at a rate of speed exceeding twenty miles per hour. ... [4] If a speed limit has been duly established upon any way, in accordance with the provisions of said section [in direct reference to the only two statutes, Mass. Gen. L. ch. 90, § 18, and Mass. Gen. L. ch. 85, § 2, which are previously mentioned above in the statute (second sentence)], operation of a motor vehicle at a rate of speed in excess of such limit shall be prima facie evidence that such speed is greater than is reasonable and proper ....

Mass. Gen. L. ch. 90, § 17 (sentence numbers and comments added in brackets).

17.    Mass. Gen. L. ch. 90C, § 3(A)(4), as amended through St. 2009, c. 27, § 74, entitled "Issuance of citations; hearing; appeal; summons or warrant; complaint; trial; license or permit suspension," is a sui generis procedure for the adjudication of civil motor vehicle infractions ("CMVIs").   It provides in pertinent part:

> In any such hearing before a magistrate or justice, the citation shall be admissible and shall be prima facie evidence of the facts stated therein. ... The magistrate or justice shall enter a finding of responsible if it was shown by a preponderance of the credible evidence that the violator committed the infraction alleged ...".

Mass. Gen. L. ch. 90C, § 3(A)(4).

18.    Mass. Gen. L. ch. 90C, § 3(A)(6), allows for automatic suspension of an operator violator's license to operate a motor vehicle or an owner violator's registration of a motor vehicle, by operation of law and without further notice or hearing, for failure to pay the full amount of the scheduled or imposed assessment to the Registrar of Motor Vehicles (hereinafter "Registrar") for a CMVI.

## STATEMENT OF FACTS

19.    Upon information and belief, the Selectmen deliberately erect and maintain signs purporting to establish a special regulation as to the speed of motor vehicles on ways within their control, i.e., a posted speed limit, which have not been erected in accordance with either the provisions of Mass. Gen L. ch. 90, § 18 (and set forth in Mass. Gen. L. ch. 85, § 2), the "Procedures for Speed Zoning on State and Municipal Roads" (2005), or "The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices," § 10A-8 (January 2012).

20.    Upon information and belief, there are at least sixty (60) speed limit signs posted on the public roadways in the Town of Hingham for which there is no record of any special speed regulations (either in the Town or the MassDOT files) having been formally adopted in accordance with the applicable statutes and regulations.  Of these speed limit signs, nineteen (19) are 30 m.p.h., nine (9) are 25 m.p.h., twenty (20) are 20

m.p.h. (and are not "within a school zone which may established by a city or town as provided in section 2 of chapter 85," pursuant to Mass. Gen. L. ch. 90, § 17(4)), and twelve (12) are 15 m.p.h.  These speed limit signs are located on eighteen (18) roadways all under the exclusive control of the Town, and represent approximately ninety percent (90%) of all the speed limit signs under the exclusive control of the Town.

21.    Upon information and belief, the Hingham Police Department issued a total of 1,866 Speeding citations during the period starting from September 28, 2011 (9/28/2011), and ending May 14, 2016 (5/14/2016).  The number of Speeding citations issued on roads with posted speed limit signs (for which there is no record of any special speed regulations) totaled four-hundred and thirty-seven (437), representing twenty-three and 4/10's percent (23.4%) of the overall total Speeding citations.

22.    Upon information and belief, the Hingham Police Department issued a total of 724 Speeding citations during the period starting from May 15, 2016 (5/15/2016), and ending December 18, 2017 (12/18/2017).

23.    Upon information and belief, the Selectmen have a well-established and widespread practice of routinely enforcing all motor vehicle speed limit signs (including those for which there is no record of any special speed regulations), by issuing traffic citations for the statutory offense of Speeding.  In view of that, applying the 23.4% incidence rate above (representing the number of Speeding citations issued on roads with speed limit signs for which there is no record of any special speed regulations) to the period from May 15, 2016 (5/15/2016) to December 18, 2017 (12/18/2017), an estimated

one-hundred and seventy (170) of these Speeding citations were issued during this period.

24.    Upon information and belief, the Hingham DPW erected and maintains a total of eight (8) speed limit signs (all for which there is no record of any special speed regulations) on Gardner St., Hingham, MA.  Of these speed limit signs, two (2) are 30 m.p.h., and six (6) are 25 m.p.h.

25.    On September 28, 2011, an officer of the Hingham Police Department issued Mr. Belezos a Massachusetts Uniform Citation for the CMVI of Speeding in excess of a 30 m.p.h. posted speed limit sign duly established under Mass. Gen. L. ch. 90, § 18, on Gardner Street, Hingham, MA.  Mr. Belezos was not travelling inside an area identified as a "thickly settled or business district at a rate of speed exceeding thirty miles per hour for a distance of one-eighth of a mile" pursuant to Mass. Gen. L. ch. 90, § 17(3).

26.    Mr. Belezos paid a $25 hearing fee to appear before a clerk-magistrate, and on December 28, 2011, a noncriminal hearing was held at Hingham District Court regarding the CMVI (the "CMVI Hearing").

27.    Upon information and belief, the singular evidence of reasonable and proper speed proffered by an officer of the Hingham Police Department at the CMVI Hearing was the Uniform Citation for the CMVI of Speeding in excess of a 30 m.p.h. posted speed limit sign duly established under Mass. Gen. L. ch. 90, § 18, on Gardner Street, Hingham, MA.  There was no proffer of evidence that Mr. Belezos was travelling inside an area identified as a "thickly settled or business district at a rate of speed exceeding thirty miles per hour for a distance of one-eighth of a mile" pursuant to Mass.

11

Gen. L. ch. 90, § 17(3).  Neither was there any proffer of evidence "having regard to traffic and the use of the way and the safety of the public" pursuant to Mass. Gen. L. ch. 90, § 17 (three elements of "a rate of speed greater than is reasonable and proper").

28.    At the conclusion of the hearing, the clerk-magistrate found Mr. Belezos responsible for the CMVI of Speeding at a rate of speed 10 m.p.h. or less over a 30 m.p.h. posted speed limit duly established under Mass. Gen. L. ch. 90, § 18.

29.    Upon information and belief, the Selectmen had actual or constructive knowledge of the speed limit signs on Gardner St., Hingham, MA, and the fact that there is no record of any special speed regulations pertaining thereto (in either the Town or the MassDOT files).  Nevertheless, they allowed an officer of the Police Department to withhold this material exculpatory evidence from the Hingham District Court.

30.    Upon information and belief, the prima facie evidence of the 30 m.p.h. posted speed limit duly established under Mass. Gen. L. ch. 90, § 18 induced Mr. Belezos to waive his right to a de novo hearing on the CMVI.

31.    On January 3, 2012, Mr. Belezos paid the $50 assessment and $50 Head Injury Trust Fund Surcharge in connection with the CMVI, in order to avoid the Registrar's threatened suspension of his license or right to operate all motor vehicles within the Commonwealth of Massachusetts, and the denial of his right to renew his registration.

32.    On January 24, 2012, a citation for Speeding was indicated on Mr. Belezos's driving record due to the December 28, 2011, judgment.

33.    The citation for Speeding was indicated on Mr. Belezos Safe Driver Insurance Plan ("SDIP") Statement, thereby ending his two year, three months incident-free driving record and its eligibility towards an automobile insurance premium discount.

34.    Upon information and belief, Mr. Belezos was employed as a delivery truck driver immediately prior to the disposition of his Speeding citation.  Mr. Belezos's SDIP Statement alerted his employer's commercial automobile insurance company to the Speeding incident, prompted the insurance company to remove him from the commercial policy, and thereby cost Mr. Belezos his job position as a delivery truck driver.

35.    Upon information and belief, the Selectmen's well-established and widespread practice of routinely enforcing all motor vehicle speed limit signs (including those for which there is no record of any special speed regulations), by issuing traffic citations for the statutory offense of Speeding, continues unabated.  For example:

    a.    On January 22, 2012, an officer of the Hingham Police Department issued Ms. Tori Glover (a Hingham resident) a Massachusetts Uniform Citation for the CMVI of Speeding in excess of a 25 m.p.h. posted speed limit sign on North St., Hingham, MA (for which there is no record of any special speed regulations);

    b.    On June 1, 2012, an officer of the Hingham Police Department issued Ms. Cynthia Castro (a Hull, MA resident) a Massachusetts Uniform Citation for the CMVI of Speeding in excess of a 35 m.p.h. posted speed limit sign on Water St., Hingham, MA (for which there is no record of any special speed regulations);

13

c.   On January 17, 2014, an officer of the Hingham Police Department issued Mr. Thomas Mckenna (a Hingham resident) a Massachusetts Uniform Citation for the CMVI of Speeding in excess of a 25 m.p.h. posted speed limit sign on Downer Ave, Hingham, MA (for which there is no record of any special speed regulations);

d.   On March 7, 2014, an officer of the Hingham Police Department issued Mr. Patrick Jenkins (a Hingham resident) a Massachusetts Uniform Citation for the CMVI of Speeding in excess of a 25 m.p.h. posted speed limit sign on Gardner St., Hingham, MA (for which there is no record of any special speed regulations);

e.   On October 17, 2014, an officer of the Hingham Police Department issued Ms. Marijane Deitsch (a Hingham resident) a Massachusetts Uniform Citation for the CMVI of Speeding in excess of a 20 m.p.h. posted speed limit sign on Beal St., Hingham, MA (for which there is no record of any special speed regulations).  Ms. Deitsch was not travelling "within a school zone which may established by a city or town as provided in section 2 of chapter 85" pursuant to Mass. Gen. L. ch. 90, § 17(4); and,

f.   On December 30, 2014, an officer of the Hingham Police Department issued Mr. Liam Richmond (a Hingham resident) a Massachusetts Uniform Citation for the CMVI of Speeding in excess of a 25 m.p.h. posted speed limit sign on Barecove Park Dr., Hingham, MA (for which there is no record of any special speed regulations).

36.     There is an actual case or controversy between Mr. Belezos and all others similarly situated on the one hand, and the Selectmen and all others similarly situated on the other hand regarding the illegality and unconstitutionality of the Selectmen's executive actions, statutes and special speed regulations generally applicable to Mr. Belezos.  A real dispute exists and Mr. Belezos has a sufficient personal interest in the rights and relief at stake to meet standing requirements. There is no indication that the Selectmen will either remove illegal speed limit signs or refrain from enforcing them. There exists a continuing threat, indeed a likelihood, of continued prosecution for Speeding in violation of phony speed limit signs.  Further, judicial efficiency would not be promoted by declining to act on this case, only to face the same issue again. This controversy can be resolved and uncertainty removed by declaratory judgment.

37.     On Monday, September 29, 2014, Belezos, individually and on behalf of himself and a class of all others similarly situated, filed an original complaint against the Selectmen in their official capacity, on behalf of themselves and a class of all others similarly situated for declaratory, legal, equitable and other relief in the Superior Court for the County of Plymouth, Massachusetts.  By his claims, Belezos sought to hold the Selectmen liable under state law for fraud upon on the court, statutory violations, unjust enrichment and conversion.  Additionally, he alleged that the Selectmen deprived him of his Fourteenth Amendment rights to substantive and procedural due process.

38.     On December 28, 2014, Belezos, individually and on behalf of himself and a class of all others similarly situated, filed a first amended complaint against the Selectmen in their official capacity, on behalf of themselves and a class of all others

similarly situated for declaratory, legal, equitable and other relief in the Superior Court for the County of Plymouth, Massachusetts.

39.    The Selectmen moved for judgment on the pleadings.

40.    On September 27, 2016, the Superior Court for the County of Plymouth, Massachusetts (Christopher J. Muse, J.), allowed the motion for judgment on the pleadings, and dismissed all counts in the amended complaint.

41.    Judgment entered on September 29, 2016.

42.    On November 14, 2017, the Appeals Court for the Commonwealth of Massachusetts affirmed the dismissal, but failed to reach the merits of Belezos's claims because he failed to exhaust his statutory remedy to contest the CMVI under Mass. Gen. L. ch. 90C, § 3.  Belezos v. Bd. of Selectmen of Hingham, 99 Mass.App.Ct. 1114 (November 14, 2017) (unpublished opinion) (court lacked subject matter jurisdiction over class action lawsuit for federal constitutional claims pursuant to 42 U.S.C. § 1983, and state claims seeking declaratory, legal, and equitable relief).

43.    Belezos is currently seeking a rehearing in the Appeals Court for the Commonwealth of Massachusetts, filed November 28, 2017, on the grounds there is no requirement of exhaustion of state remedies for claims under 42 U.S.C. § 1983.

44.    Belezos is currently seeking Further Appellate Review in the Supreme Judicial Court for the Commonwealth of Massachusetts, filed December 4, 2017, on the grounds there is no requirement of exhaustion of state remedies for claims under 42 U.S.C. § 1983.

45.    Mr. Belezos commences this present action as a "new action for the same cause within one year after the dismissal or other determination of the original action," by the Appeals Court for the Commonwealth of Massachusetts (November 14, 2017), for any matter of form, pursuant to Mass. Gen. L. ch. 260, § 32 ("Savings Statute").

## CLASS ACTION ALLEGATIONS

46.    Mr. Belezos brings this action on his own behalf and as a class action on the behalf of all other similarly situated persons, pursuant to Fed. R. Civ. P. 23(a) and (b) on behalf of a Plaintiff Class defined as:

> Any person who received motor vehicle citations for the offense of "Speeding" in excess of an illegal and unenforceable posted speed limit sign and who, by reason thereof, suffered or experienced an adverse legal consequence, including payment of an assessment, surcharge, cost or fee in disposition of the citation, or whose admission or finding of responsibility have been or may be counted against them in the future for the purposes of adversely affecting their driving record or automobile insurance premium, or all these things, from September 28, 2011, to the date of the judgment in this action.

47.    Excluded from the Plaintiff Class are the Selectmen and members of the Defendant Class, Plaintiff's counsel, the judges to whom this case is assigned, and any family members thereof.  Mr. Belezos reserves the right to modify or amend the Plaintiff Class definition as appropriate.

48.    Mr. Belezos brings this action on his own behalf and as a class action on the behalf of all other similarly situated persons, pursuant to Fed. R. Civ. P. 23(a) and (b) against a Defendant Class defined as:

> The board of selectmen, the city council, the transportation commission of the city of Boston, park commissioners, a traffic commission or traffic director, or the secretary of the Department of Transportation or Executive Office of Public

Safety of the Commonwealth of Massachusetts, or any public official or employee of all agencies, counties, cities, towns or other political subdivisions of the Commonwealth of Massachusetts, who erected or maintained illegal and unenforceable posted speed limit signs, or who enforced these posted speed limit signs by issuing motor vehicle citations for the offense of "Speeding" in excess of the illegal and unenforceable speed limit signs, or who, by reason thereof, enjoyed or experienced a favorable legal consequence, including receipt of assessments, surcharges, costs or fees in disposition of the citations, or all these things, from September 28, 2011, to the date of the judgment in this action.

49.    Certification of the Plaintiff's claims for class-wide treatment is appropriate because Mr. Belezos can prove elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50.    Numerosity – Fed. R. Civ. P. 23(a)(1).  The Class is so numerous that individual joinder of all Class members is impracticable.  Mr. Belezos is informed and believes that there are hundreds of Plaintiff Class members, and scores of Defendant Class members.  The precise number of Class members and their addresses are unknown to Mr. Belezos, but may be ascertained from MassDOT, Registry of Motor Vehicles (hereinafter "RMV"), highway and police department records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, published notice, or all of these things.

51.    Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and 23(b).  This action involves questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class members.  All Plaintiff

Class members were subject to the Defendant Class members same traffic enforcement of phony speed limit signs by issuance of bogus Speeding citations.  Defendant Class members have acted and refused to act on grounds of illegal and unconstitutional executive actions, statutes and special speed regulations generally applicable to the Plaintiff Class so that final declaratory or injunctive relief would be appropriate to the Plaintiff Class as a whole.  Furthermore, common questions of law and fact include, but are not limited to:

    a.  Whether Defendants' conduct of erecting phony speed limit signs as alleged herein violates Mass. Gen. L. ch. 90, § 18 (and set forth in Mass. Gen. L. ch. 85, § 2), the "Procedures for Speed Zoning on State and Municipal Roads" (2005), and "The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices," § 10A-8 (January 2012);

    b.  Whether Defendants' conduct of enforcing phony speed limit signs as alleged herein violates Mass. Gen. L. ch. 90, § 17;

    c.  Whether Defendants' conduct of fabricating false prima facie evidence of phony speed limit signs and bogus speeding citations as alleged herein deprives Plaintiffs of their property and liberty without due process of law;

    d.  Whether Defendants' conduct of withholding material exculpatory evidence of the lack of special speed regulations pertaining to phony speed limit signs as alleged herein deprives Plaintiffs of their property and liberty without due process of law;

    e.  Whether the lack of any evidentiary proof requirement under Mass. Gen. L. ch. 90, § 17, pertaining to whether a posted speed limit has been duly established upon any way deprives Plaintiffs of their property and liberty without due process of law; and,

    f.  Whether CMVI hearings under G.L.c. 90C, § 3, are governed by a constitutionally defective evidentiary standard that deprives Plaintiffs of their property and liberty without due process of law.

52.     Typicality – Fed. R. Civ. P. 23(a)(3).  Mr. Belezos's claims are typical of the claims of the other members of the Plaintiff Class because, among other things, all Plaintiff Class members were similarly injured through the uniform misconduct of Defendant Class members described herein.  Namely, all Plaintiff Class members have the same claims, i.e., that Defendants' illegal and unconstitutional executive actions, statutes and special speed regulations deprived them of their property and liberty without due process of law, and that the Defendant Class members acted ultra vires.  Moreover, Defendant Class members are juridically linked through their common relationship as public officials to the Commonwealth of Massachusetts.  This information is sufficient to support a determination that both Mr. Belezos and the Selectmen satisfy the typicality requirement.

53.     Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).  Mr. Belezos is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; he has retained counsel competent and experienced in complex litigation, and the specific claims herein; and Mr. Belezos intends to prosecute this action vigorously.  The Plaintiff Class members' interests will be fairly and adequately protected by Mr. Belezos and his counsel.  Likewise, the Selectmen are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; and they have every incentive to defend this action vigorously.  Defendant Class members' interests will be fairly and adequately protected by the Board of Selectmen of the Town of Hingham.

54.     Superiority - Fed. R. Civ. P. 23(b).  A class action is superior to any other available methods for fairly and efficiently adjudicating this controversy, and no unusual

difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Mr. Belezos and other members of the Plaintiff Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against the members of the Defendant Class, the pursuit of which occasionally can prove recondite. For instance, both the law of Constitutional due process and remedies against government officials are vast and complex bodies of doctrine, full of technical distinctions, fictional explanations, and contested compromises. So it would be therefore impracticable for the Plaintiff Class members to individually seek redress for Defendants' wrongful conduct. Even if the Plaintiff Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Moreover, the juridical link that exists between the Defendant Class members is a legal relationship which unites them in a way that makes a single lawsuit more efficient than separate suits against individual defendants.

## CLAIMS FOR RELIEF

(Mr. Belezos and the members of the Plaintiff Class against the Selectmen in their official capacity and the members of the Defendant Class in their official capacity)

## COUNT I

(Massachusetts Statutory Violation)

Mass. Gen. L. ch. 90, § 18 (and set forth in Mass. Gen. L. ch. 85, § 2)

55.     Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

56.     Selectmen's erection of motor vehicle speed limit signs purporting to set forth a speed limit duly established by a special speed regulation without: (1) MassDOT and the Registrar, acting jointly, certifying in writing that such regulation is consistent with the public interests, and (2) erecting upon the ways affected thereby and at such points as MassDOT and the Registrar, acting jointly, may designate, signs, conforming to standards adopted by MassDOT, setting forth the speed established by the regulation, violates the provisions of  Mass. Gen. L. ch. 90, § 18.

57.     Selectmen's erection of speed limit signs in violation of Mass. Gen. L. ch. 90, § 18 (and set forth in Mass. Gen. L. ch. 85, § 2), exceeds the authority granted to them by the Commonwealth of Massachusetts, is ultra vires and void, and therefore these posted speed signs are illegal and unenforceable.

**COUNT II**

(Massachusetts Statutory Violation)

Mass. Gen. L. ch. 90, § 17

58.    Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

59.    Selectmen's enforcement of motor vehicle speed limit signs purporting to be duly established in accordance with the provisions of said section, namely Mass. Gen. L. ch. 90, § 18, but in fact are not duly established, violates the provisions of  Mass. Gen. L. ch. 90, § 17.

60.    Selectmen's enforcement of illegally posted speed limit signs in violation of Mass. Gen. L. ch. 90, § 17, exceeds the authority granted to them by the Commonwealth of Massachusetts, and is therefore ultra vires and void.

**COUNT III**

(Massachusetts Regulatory Violation)

"Procedures for Speed Zoning on State and Municipal Roads" (2005)

61.    Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

62.    Selectmen's erection and enforcement of motor vehicle speed limit signs purporting to set forth a speed limit duly established by a special speed regulation without: (1) completing a thorough traffic engineering study, (2) drafting a special speed

regulation, and (3) approval by the governing authority, the Registrar and MassHwy, violates the "Procedures for Speed Zoning on State and Municipal Roads" (2005).

63.     Selectmen's erection of speed limit signs in violation of the "Procedures for Speed Zoning on State and Municipal Roads" (2005) exceeds the authority granted to them by the Commonwealth of Massachusetts, is ultra vires and void, and therefore these posted speed signs are illegal and unenforceable.

## COUNT IV

(Massachusetts Regulatory Violation)

"The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices," § 10A-8 (January 2012)

64.     Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

65.     Selectmen's erection and enforcement of motor vehicle speed limit signs purporting to set forth a speed limit duly established by a special speed regulation without: (1) conducting proper studies and submitting data of the proposed speed zones to MassDOT, (2) conducting all hearings required for adoption drafting a special speed regulation, (3) notifying MassDOT of formal adoption by the municipality, (4) approval by MassDOT and the Registry, (5) installing official speed limit signs accordance with the specific provisions of the approved regulation, and only then (6) enforcing against violators, violates the "The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices," § 10A-8 (January 2012).

66.     Selectmen's erection of speed limit signs in violation of the "The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices," § 10A-8 (January 2012) exceeds the authority granted to them by the Commonwealth of Massachusetts, is ultra vires and void, and therefore these posted speed signs are illegal and unenforceable.

## COUNT V

Deliberate and Reckless Fabrication of False Evidence

(Civil Rights Violation of the Substantive Due Process Clause of the 14th Amendment to the United States Constitution as secured by 42 U.S.C. § 1983)

67.     Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

68.     Upon information and belief, it is the policy, custom, or practice, or all of these, of the Selectmen, to knowingly, recklessly, or with deliberate indifference and callous disregard of the applicable statutes, regulations and Mr. Belezos's rights, either erect and maintain, cause to be erected and maintained, or fail to remove or cause to be removed, signs that purport to duly establish a posted regulatory speed limit in accordance with the provisions of Mass. Gen. L. ch. 90, § 18, and therefore prima facie evidence of a reasonable and proper speed limit under Mass. Gen. L. ch. 90, § 17.  Said signs in fact falsely represent a special speed regulation where none exists, are unauthorized by the regulatory authorities of the Commonwealth in violation of the aforesaid statute and regulations, are therefore considered illegal and unenforceable, and cannot be prima facie evidence of a reasonable and proper speed limit.  These actions

were taken under the color of law within the meaning of the Federal Civil Rights Act, 42 U.S.C. § 1983.

69.     As a direct and proximate result of their acts as set forth above, the Selectmen deprived Mr. Belezos of his property and threatened to deprive him of his liberty, without due process of law, in violation of the guarantees of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983.

70.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Belezos claims all damages, costs and attorney's fees that he is entitled by law to recover from the Selectmen for legal deprivations, injuries and losses set forth herein, which deprivations, injuries and losses were caused by said Selectmen under the color of law in violation of Mr. Belezos's federal constitutional rights.

**COUNT VI**

Failure to Adequately Train, Supervise and Discipline

(Civil Rights Violation of the Substantive Due Process Clause of the 14th Amendment to the United States Constitution as secured by 42 U.S.C. § 1983)

71.     Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

72.     Upon information and belief, it is the policy, custom, or practice, or all of these, of the Selectmen, to knowingly, recklessly, or with deliberate indifference and callous disregard of the applicable statutes, regulations and Mr. Belezos's rights, fail to instruct, supervise, control and discipline on a continuing basis personnel under their

control in their duties to refrain from unlawfully and maliciously either erecting and maintaining, causing to be erected and maintained, or failing to remove or causing to be removed signs that purport to duly establish a posted regulatory speed limit in accordance with the provisions of Mass. Gen. L. ch. 90, § 18, and therefore prima facie evidence of a reasonable and proper speed limit under Mass. Gen. L. ch. 90, § 17.  Said signs in fact falsely represent a special speed regulation where none exists, are unauthorized by the regulatory authorities of the Commonwealth in violation of Mass. Gen. L. ch. 90, § 18, are therefore considered illegal and unenforceable, and cannot be prima facie evidence of a reasonable and proper speed limit.

73.    Upon information and belief, the Selectmen had actual or constructive knowledge or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.

74.    Upon information and belief, the Selectmen had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard of Mr. Belezos's rights failed or refused to do so.

75.    Upon information and belief, the Selectmen directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of personnel under their control heretofore described.

76.    As a direct and proximate result of their acts as set forth above, the Selectmen deprived Mr. Belezos of his property and threatened to deprive him of his

liberty, without due process of law, in violation of the guarantees of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983.

77.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Belezos claims all damages, costs and attorney's fees that he is entitled by law to recover from the Selectmen for legal deprivations, injuries and losses set forth herein, which deprivations, injuries and losses were caused by said Selectmen under the color of law in violation of Mr. Belezos's federal constitutional rights.

## COUNT VII

Deliberate and Reckless Fabrication of False Evidence

(Civil Rights Violation of the Substantive Due Process Clause of the 14th Amendment to the United States Constitution as secured by 42 U.S.C. § 1983)

78.    Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

79.    Upon information and belief, it is the policy, custom, or practice, or all of these, of the Selectmen, to knowingly, recklessly, or with deliberate indifference and callous disregard of the applicable statutes, regulations and Mr. Belezos's rights, issue, cause to be issued, or fail to cause not to be issued Mr. Belezos a citation charging him with Speeding in excess of an illegal and unenforceable posted speed limit, and therefore prima facie evidence of the facts stated therein under Mass. Gen. L. ch. 90C, § 3(A)(4). Said citation in fact falsely represents a special speed regulation where none exists, and therefore cannot be prima facie evidence of the fact of the posted speed limit stated

therein.   These actions were taken under the color of law within the meaning of the Federal Civil Rights Act, 42 U.S.C. § 1983.

80.    As a direct and proximate result of their acts as set forth above, the Selectmen deprived Mr. Belezos of his property and threatened to deprive him of his liberty, without due process of law, in violation of the guarantees of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983.

81.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Belezos claims all damages, costs and attorney's fees that he is entitled by law to recover from the Selectmen for legal deprivations, injuries and losses set forth herein, which deprivations, injuries and losses were caused by said Selectmen under the color of law in violation of Mr. Belezos's federal constitutional rights.

## COUNT VIII

Failure to Adequately Train, Supervise and Discipline

(Civil Rights Violation of the Substantive Due Process Clause of the 14th Amendment to the United States Constitution as secured by 42 U.S.C. § 1983)

82.    Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

83.    Upon information and belief, it is the policy, custom, or practice, or all of these, of the Selectmen, to knowingly, recklessly, or with deliberate indifference and callous disregard of the applicable statutes, regulations and Mr. Belezos's rights, fail to instruct, supervise, control and discipline on a continuing basis personnel under their

control in their duties to refrain from unlawfully and maliciously issuing Mr. Belezos a citation charging him with Speeding in excess of an illegal and unenforceable posted speed limit, and therefore prima facie evidence of the facts stated therein under Mass. Gen. L. ch. 90C, § 3(A)(4).   Said citation in fact falsely represents a special speed regulation where none exists, and therefore cannot be prima facie evidence of the fact of the posted speed limit stated therein.

84.    Upon information and belief, the Selectmen had actual or constructive knowledge or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.

85.    Upon information and belief, the Selectmen had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard of Mr. Belezos's rights failed or refused to do so.

86.    Upon information and belief, the Selectmen directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of personnel under their control heretofore described.

87.    As a direct and proximate result of their acts as set forth above, the Selectmen deprived Mr. Belezos of his property and threatened to deprive him of his liberty, without due process of law, in violation of the guarantees of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983.

88.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Belezos claims all damages, costs and attorney's fees that they are entitled by law to recover from the Selectmen for legal deprivations, injuries and losses set forth herein, which deprivations, injuries and losses were caused by said Selectmen under the color of law in violation of Mr. Belezos's federal constitutional rights.

## COUNT IX

Deliberate and Reckless Withholding of Exculpatory Evidence

(Civil Rights Violation of the Substantive Due Process Clause of the 14th Amendment to the United States Constitution as secured by 42 U.S.C. § 1983)

89.     Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

90.     Upon information and belief, it is the policy, custom, or practice, or all of these, of the Selectmen, to knowingly, recklessly, or with deliberate indifference and callous disregard of the applicable statutes, regulations and Mr. Belezos's rights, withhold, cause to be withheld, or fail to cause not to be withheld material exculpatory evidence and maintain unfounded charges against Mr. Belezos of Speeding in excess of illegal and unenforceable posted speed limit signs, despite the fact that they knew or should have known that Mr. Belezos could not be found responsible for violating illegal and unenforceable speed limit signs.  These actions were taken under the color of law within the meaning of the Federal Civil Rights Act, 42 U.S.C. § 1983.

91.     As a direct and proximate result of their acts as set forth above, the Selectmen deprived Mr. Belezos of his property and threatened to deprive him of his liberty, without due process of law, in violation of the guarantees of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983.

92.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Belezos claims all damages, costs and attorney's fees that he is entitled by law to recover from the Selectmen for legal deprivations, injuries and losses set forth herein, which deprivations, injuries and losses were caused by said Selectmen under the color of law in violation of Mr. Belezos's federal constitutional rights.

## COUNT X

Failure to Adequately Train, Supervise and Discipline

(Civil Rights Violation of the Substantive Due Process Clause of the 14th Amendment to the United States Constitution as secured by 42 U.S.C. § 1983)

93.     Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

94.     Upon information and belief, it is the policy, custom, or practice, or all of these, of the Selectmen, to knowingly, recklessly, or with deliberate indifference and callous disregard of the applicable statutes, regulations and Selectmen' rights, fail to instruct, supervise, control and discipline on a continuing basis personnel under their control in their duties to refrain from unlawfully and maliciously withholding material exculpatory evidence and maintaining unfounded charges against Mr. Belezos of

Speeding in excess of illegal and unenforceable posted speed limit signs, despite the fact that they knew or should have known that Mr. Belezos could not be found responsible for violating illegal and unenforceable speed limit signs.

95.    Upon information and belief, the Selectmen had actual or constructive knowledge or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.

96.    Upon information and belief, the Selectmen had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard of Mr. Belezos's rights failed or refused to do so.

97.    Upon information and belief, the Selectmen directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of personnel under their control heretofore described.

98.    As a direct and proximate result of their acts as set forth above, the Selectmen deprived Mr. Belezos of his property and threatened to deprive him of his liberty, without due process of law, in violation of the guarantees of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983.

99.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Belezos claims all damages, costs and attorney's fees that he is entitled by law to recover from the Selectmen for legal deprivations, injuries and losses set forth herein, which deprivations, injuries and losses

were caused by said Selectmen under the color of law in violation of Mr. Belezos's federal constitutional rights.

## COUNT XI

Unconstitutional Lack of Evidentiary Safeguard

(Civil Rights Violation of the Procedural Due Process Clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983)

100.    Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

101.    At all relevant times, Mr. Belezos possessed a constitutionally protected property interest in both his money, license to operate and register a motor vehicle, and a constitutionally protected liberty interest in maintaining his license to operate a motor vehicle.

102.    Upon information and belief, the actions of the Selectmen were taken with reckless or callous indifference Mr. Belezos's constitutional rights.

103.    Any reasonable public official would have known that the actions of the Selectmen were in violation of the Fourteenth Amendment and the procedural due process rights of Mr. Belezos.

104.    The process provided by state law to safeguard Mr. Belezos's protected property and liberty interests, which process Mr. Belezos has exercised and lost, is not constitutionally adequate.  Specifically, the lack of any evidentiary proof requirement pertaining to whether a posted speed limit has been duly established upon any way is

34

inadequate to ensure that the persuasive force of prima facie evidence - that operation of a motor vehicle at a rate of speed in excess of such limit is greater than shall be prima facie evidence that such speed is greater than is reasonable and proper – is not improperly triggered under Mass. Gen. L. ch. 90, § 17.   This lack of any evidentiary proof requirement, namely providing a duly established special speed regulation, invites the deliberate or reckless fabrication of prima facie evidence in the form of illegally erected and unlawfully enforced posted speed limits.

105.    Upon information and belief, the Selectmen are able to seize upon this evidentiary loophole to successfully fabricate and introduce into evidence illegal speed limit signs as false prima facie evidence of a reasonable and proper speed, to inflict harm upon Mr. Belezos, his rights and his interests that has not been redressed.

106.    As a direct and proximate result of their acts as set forth above, the Selectmen deprived Mr. Belezos of his property and threatened to deprive him of his liberty, without due process of law, in violation of the guarantees of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983.

107.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Belezos claims all damages, costs and attorney's fees that they are entitled by law to recover from the Selectmen for legal deprivations, injuries and losses set forth herein, which deprivations, injuries and losses were caused by said the Selectmen under the color of law in violation of Mr. Belezos's federal constitutional rights.

## COUNT XII

Constitutionally Defective Evidentiary Standard

(Civil Rights Violation of the Procedural Due Process Clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983)

108.    Mr. Belezos repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

109.    At all relevant times, Mr. Belezos possessed a constitutionally protected property interest in both his money, license to operate and register a motor vehicle, and a constitutionally protected liberty interest in maintaining his license to operate a motor vehicle.

110.    Upon information and belief, the actions of the Selectmen were taken with reckless or callous indifference Mr. Belezos's constitutional rights.

111.    Any reasonable public official would have known that the actions of the Selectmen were in violation of the Fourteenth Amendment and the procedural due process rights of Mr. Belezos.

112.    The process provided by state law to safeguard Mr. Belezos's protected property and liberty interests, which process Mr. Belezos has exercised and lost, is not constitutionally adequate.  Specifically, CMVI hearings under G.L.c. 90C, § 3, are governed by a constitutionally defective evidentiary standard - a preponderance of the credible evidence that a violator committed the motor vehicle infraction alleged.  This level of certainty is below that which is necessary to preserve fundamental fairness in a

government-initiated proceeding that threatens the individual interests at stake in the state proceeding, which are both particularly important and more substantial than the mere loss of money - such as a significant deprivation of liberty or stigma.

113.    Upon information and belief, the Selectmen are able to seize upon this constitutionally defective evidentiary standard to inflict harm upon Mr. Belezos, his rights and his interests that has not been redressed.

114.    As a direct and proximate result of their acts as set forth above, the Selectmen deprived Mr. Belezos of his property and threatened to deprive him of his liberty, without due process of law, in violation of the guarantees of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983.

115.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Belezos claims all damages, costs and attorney's fees that they are entitled by law to recover from the Selectmen for legal deprivations, injuries and losses set forth herein, which deprivations, injuries and losses were caused by said Selectmen under the color of law in violation of Mr. Belezos's federal constitutional rights.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff Nicholas G. Belezos, individually and on behalf of all others similarly situated, respectfully requests and prays that this Honorable Court enter judgment on each and every count of this Complaint against Selectmen and members of the Defendant Class in favor of Mr. Belezos and the Plaintiff Class as follows:

1. Determine and order that this action may proceed as a class action and certify the Classes either as described above or as otherwise found by the Court to be appropriate;

2. Appoint Mr. Belezos as representative of the Plaintiff Class;

3. Appoint Selectmen as representatives of the Defendant Class;

4. Appoint counsel for Mr. Belezos as Plaintiff Class Counsel;

5. Declare that the Selectmen and the Defendant Class members' erection of posted speed limit signs in violation of Mass. Gen. L. ch. 90, § 18 (and set forth in Mass. Gen. L. ch. 85, § 2), the "Procedures for Speed Zoning on State and Municipal Roads" (2005), and "The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices," § 10A-8 (January 2012), exceeds the authority granted to them by the Commonwealth of Massachusetts, is ultra vires and void, and therefore these posted speed signs are illegal and unenforceable;

6. Declare that the Selectmen and the Defendant Class members' enforcement of illegally posted speed limit signs is in violation of Mass. Gen. L. ch. 90, §17,

exceeds the authority granted to them by the Commonwealth of Massachusetts, and is therefore ultra vires and void;

7. Declare that failure to require evidentiary proof of a duly established Special Speed Regulation upon any way to establish that a speed limit has been duly established, in order that operation of a motor vehicle at a rate of speed in excess of such limit shall be prima facie evidence that such speed is greater than is reasonable and proper under Mass. Gen. L. ch. 90, § 17, violates the Procedural Due Process Clause of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983;

8. Declare that the preponderance of credible evidence standard governing CMVI hearings under G.L.c. 90C, § 3, is below that which is necessary to preserve fundamental fairness in a government-initiated proceeding that threatens protected property and liberty interests, and violates the Procedural Due Process Clause of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983;

9. Order the Selectmen and members of the Defendant Class to identify and remove all illegal speed limit signs erected or maintained on ways within their control;

10. Order the Selectmen and members of the Defendant Class to identify all Speeding citations issued by them on any way with illegal speed limit signs;

11. Order the Selectmen and members of the Defendant Class to identify all members of the Plaintiff Class and notify each class member of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include

U.S. mail, electronic mail, Internet postings, published notice, or all of these things;

12. Order restitution or other equitable relief in favor of Mr. Belezos and members of the Plaintiff Class including a refund and return of all fines, costs, surcharges and fees collected, converted or possessed by the Selectmen and members of the Defendant Class as a result of their enforcement of the illegal and unenforceable speed limit signs;

13. Award Mr. Belezos and members of the Plaintiff Class compensatory damages, including nominal, actual, consequential and incidental damages according to proof against the Selectmen and members of the Defendant Class;

14. Award Mr. Belezos and members of the Plaintiff Class pre-judgment interest;

15. Award Mr. Belezos and members of the Plaintiff Class costs and reasonable attorney's fees; and,

16. Grant such further relief as this Honorable Court may deem equitable, just and appropriate.

## DEMAND FOR JURY TRIAL

Mr. Belezos and the members of the Plaintiff Class hereby request and demand a jury trial, as appropriate, on all issues and claims raised in this complaint.

Respectfully submitted,

Mr. Belezos and the members of the Plaintiff Class, by their attorney

FREDERIC P. ZOTOS

By _/s/ Frederic P. Zotos_

Frederic P. Zotos, Esq.
BBO#565308
28 Old Coach Road
Cohasset, MA 02025
Tel: (781) 836-4295
E-Mail: fzotos@gmail.com

Dated: December 28, 2017