UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NICHOLAS G. BELEZOS,
on behalf of himself and
all others similarly situated,
     Plaintiff,


          v.                          CIVIL ACTION NO.
                                      17-12570-MBB


BOARD OF SELECTMEN of
Hingham, Massachusetts,
in their official capacity,
on behalf of themselves and
all others similarly situated,
     Defendants.



**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION FOR PLAINTIFF CLASS CERTIFICATION**
**(DOCKET ENTRY # 16)**

**November 27, 2019**

**BOWLER, U.S.M.J.**

     Pending before this court is a motion filed by plaintiff

Nicholas G. Belezos ("plaintiff") to certify a proposed class,

designate himself as class representative, and designate

plaintiff's current counsel, Frederic P. Zotos, Esq. ("Zotos"),

as class counsel pursuant to Fed. R. Civ. P. 23(c) and (g)

("Rule 23").  (Docket Entry # 16).  Plaintiff contends that

defendants Board of Selectmen of Hingham, Massachusetts

("defendants") erected, maintained, and enforced speed limit

signs without regulatory authority.  According to plaintiff,

"[t]he claims can be proven on a classwide basis" and "382 potential plaintiff class members have already been identified." (Docket Entry # 16, p. 1). Defendants maintain that the proposed class does not satisfy the requirements for class certification. (Docket Entry # 25).

PROCEDURAL BACKGROUND

A first amended complaint sets out eight causes of action against defendants arising out of a speeding ticket plaintiff received for traveling in excess of a 30-mile-per-hour ("m.p.h.") speed limit reflected in a posted speed limit sign on Gardner Street in Hingham, Massachusetts in violation of Massachusetts General Laws chapter 90 ("chapter 90"), section 18 ("section 18"). (Docket Entry # 11, pp. 12, 40-51). Counts IV through VIII allege federal constitutional claims, while counts I through III are pendent ultra vires claims under state law. (Docket Entry # 11, pp. 40-51). A prior opinion recites the causes of action, which need not be repeated. (Docket Entry # 22, pp. 2-3).

Before filing suit in this court, Zotos, plaintiff's counsel, challenged a ticket he received for exceeding the 30 m.p.h. posted speed limit on Gardner Street in both state and federal court. In federal court, Zotos challenged the legitimacy of the speed limit sign on Gardner Street in Zotos v. Town of Hingham, et al., Civil Action No. 12-11126-JGD, 2013 WL

5328478 (D. Mass. Sept. 19, 2013) ("<u>Zotos I</u>"), and again in <u>Zotos v. Town of Hingham, et al.</u>, Civil Action No. 13-13065-DJC (D. Mass. Mar. 25, 2016) ("<u>Zotos II</u>"). (Docket Entry ## 8-3, 8-6). In a lengthy opinion on the merits, the court in <u>Zotos I</u> rejected Zotos' federal constitutional and state law claims and dismissed the action.[1] (Docket Entry # 8-3). The First Circuit upheld the dismissal. (Docket Entry # 8-4). Zotos filed <u>Zotos II</u> prior to the First Circuit's decision in <u>Zotos I</u>. (Docket Entry ## 8-4, 8-5). On March 25, 2016, the court in <u>Zotos II</u> issued a comprehensive opinion on the 42 U.S.C. § 1983 ("section 1983") claims as well as the newly-added ultra vires state law claims and dismissed the action. (Docket Entry # 8-6).

In the state court proceeding, Zotos exercised his right to appeal a finding of "'responsible'" made by a clerk-magistrate in Hingham District Court for exceeding the posted 30 m.p.h. speed limit sign on Gardner Street purportedly erected and enforced in violation of section 18. (Docket Entry ## 25-2, 25-3). After the Appellate Division of the District Court Department ("the appellate division") upheld the decision, Zotos appealed the matter to the Massachusetts appeals court ("appeals court"). (Docket Entry ## 25-1, 25-3). In an amended brief to

---

[1] The state law claims consisted of abuse of process, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment. (Docket Entry # 8-3, p. 2).

the appeals court, Zotos argued that the erection and
enforcement of the 30 m.p.h. speed limit sign was ultra vires
and therefore unenforceable given the absence of an engineering
study and a special speed regulation under section 18 to support
the sign. (Docket Entry # 25-1). He also asserted violations
of substantive due process, namely, that the enforcement of the
illegally posted sign "shocks the conscience," as well as
violations of procedural due process. (Docket Entry # 25-1).
The appeals court affirmed the decision of the appellate
division. (Docket Entry # 25-3); Hingham Police Dep't v. Zotos,
No. 11-P-1716, 2012 WL 1689189 (Mass. App. Ct. May 16, 2012)
(unpublished). The Massachusetts Supreme Judicial Court ("SJC")
denied Zotos' request for leave to obtain further appellate
court review. Police Dep't of Hingham v. Zotos, 973 N.E.2d 1269
(Mass. 2012) (table).

Before bringing this action in federal court, plaintiff
brought a number of similar claims against the same defendants
in Massachusetts Superior Court ("trial court") in Belezos v.
Board of Selectmen of the Town of Hingham, No. PLCV2014-01018B
("Belezos"). (Docket Entry # 15-1). In allowing defendants'
Mass. R. Civ. P. 12(c) motion, the trial court addressed and
rejected the merits of the state law ultra vires claims
regarding erecting and enforcing the 30 m.p.h. speed limit sign
on Gardner Street without a special speed regulation under

4

section 18.  The trial court also dismissed the substantive and

procedural section 1983 claims largely based on the decisions in

Zotos I and Zotos II.  (Docket Entry # 8-7).  The appeals court

upheld the trial court's dismissal on the basis that plaintiff

did not exhaust the statutory remedies provided in Massachusetts

General Laws chapter 90C ("chapter 90C"), section three.  More

specifically, the appeals court considered it "unnecessary to

reach the merits of Belezos's claims because he waived his right

to contest the" speeding ticket "by failing to pursue the remedy

expressly provided for by the Legislature" in chapter 90C,

section three.  (Docket Entry # 8-8) (citing chapter 90C,

section three).  Plaintiff filed an application for leave to

obtain further appellate court review ("ALOFAR") with the SJC

and, during the pendency of the ALOFAR before the SJC, plaintiff

filed this action on December 28, 2017.  The SJC denied the

ALOFAR in February 2018.[2]  (Docket Entry # 8-9); Belezos v. Board

of Selectman of Hingham, 102 N.E.3d 424 (Mass. 2018) (table).

The ultra vires state law claims and the federal due

process claims under section 1983 in plaintiff's state court

---

[2]  Zotos also represented a plaintiff bringing similar claims
against the City of Salem in Sever v. City of Salem, Civil
Action No. 18-11482-MBB, which this court dismissed for lack of
standing on July 15, 2019.  The case is presently on appeal
before the First Circuit.  Sever v. City of Salem, 390 F. Supp.
3d 299 (D. Mass. 2019), *appeal docketed*, No. 19-1831 (1st Cir.
Aug. 30, 2019).

action and in <u>Zotos II</u> are similar to the ultra vires state law claims and the federal section 1983 due process claims brought in this action based on the 30 m.p.h. speed limit sign on Gardner Street. (Docket Entry # 11, pp. 40-43) (Docket Entry # 15-1, pp. 29-32); (Docket Entry # 8-7, p. 4) ("core issue raised by Zotos, now on behalf of Belezos, is: Did Hingham have the right to install *that* sign, and did the Hingham police have the authority to enforce a speed limit on Gardner St? . . . 'Yes, they did.'") (emphasis added).

On March 29, 2019 in this proceeding, this court allowed a motion to dismiss the individual federal law claims (counts IV to VIII) on the basis of claim preclusion and, in the alternative, on the merits.[3] This court also determined that claim preclusion barred the individual state law claims but held the motion to dismiss these state law claims in abeyance pending a determination of the class certification motion.[4] (Docket Entry # 22, p. 40). On July 3, 2019, this court allowed plaintiff's motion for reconsideration as to claim preclusion

---

[3] <u>See</u> 3 William B. Rubenstein, <u>Newberg on Class Actions</u>, § 7:9 (5th ed. 2019) (courts "often handle [motions to dismiss] prior to deciding a motion for class certification"); <u>id.</u> (also noting "the trend" is "towards resolving motions to dismiss prior" to class certification); <u>see</u>, <u>e.g.</u>, <u>Mitchell v. U.S. Airways, Inc.</u>, 858 F.Supp.2d 137, 146 (D. Mass. 2012).

[4] Defendants accurately recite this ruling (Docket Entry # 31, p. 2) and plaintiff recognizes this court allowed the "dismissal in part" (Docket Entry # 32, p. 3).

only on the state law claims in counts I through III. (Docket

Entry # 30). These individual claims, together with the

remaining putative class claims, therefore constitute the claims

in this proceeding at this juncture. On August 1, 2019,

defendants filed a motion to reconsider the July 2019 decision

as to claim preclusion on the state law claims, which remains

pending. (Docket Entry # 31).

STANDARD OF REVIEW

A class action may be certified if:

> (1) the class is so numerous that joinder of all members is
> impracticable; (2) there are questions of law or fact
> common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or
> defenses of the class; and (4) the representative parties
> will fairly and adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a). Courts "must undertake a 'rigorous

analysis' to determine whether plaintiffs me[e]t the four

threshold requirements of Rule 23(a) . . .." In re Nexium

Antitrust Litig., 777 F.3d 9, 17 (1st Cir. 2015) (internal

citations omitted). Nonetheless, the First Circuit recognizes

in Nexium that "[t]here cannot be a more stringent burden of

proof in class actions than in individual actions." Id. at 20.

As such, a "'[r]igorous analysis'" "does not require raising the

bar for plaintiffs *higher* than they would have to meet in

individual suits." Id. at 20 (quoting Gen. Tel. Co. of the Sw.

v. Falcon, 457 U.S. 147, 161 (1982)) (emphasis in original).

Where, as here, certification is sought pursuant to Rule
23(b)(2), the court must determine whether defendants have
"acted or refused to act on grounds that apply generally to the
class, so that final injunctive relief or corresponding
declaratory relief is appropriate respecting the class as a
whole." Fed. R. Civ. P. 23(b)(2). When a plaintiff seeks to
certify a proposed class under Rule 23(b)(3)——also at issue in
the case at bar——it must be shown that "questions of law or fact
common to class members predominate over any questions affecting
only individual members, and that a class action is superior to
other available methods for fairly and efficiently adjudicating
the controversy." Fed. R. Civ. P. 23(b)(3). As with Rule
23(a), "'"rigorous analysis"'" is typically applied to
determinations of whether Rule 23(b) requirements are satisfied.
Schonton v. MPA Granada Highlands LLC, Civil Action No. 16-
12151-DJC, 2019 WL 1455197, at *1 (D. Mass. Apr. 2, 2019)
(quoting In re Nexium Antitrust Litig., 777 F.3d at 17).
Whereas this court considers the pleadings, see Gen. Tel. Co. of
the Sw. v. Falcon, 457 U.S. at 160 ("[s]ometimes the issues are
plain enough from the pleadings to determine whether the
interests of the absent parties are fairly encompassed within
the named plaintiff's claim, and sometimes it may be necessary
for the court to probe behind the pleadings before coming to
rest on the certification question"), plaintiff must "satisfy

8

through evidentiary proof at least one of the provisions of Rule 23(b)." Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). The analysis "will frequently entail overlap with the merits of the plaintiff's underlying claim" because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. at 33-34 (internal quotation marks and citations omitted); accord In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 24 (1st Cir. 2008) ("It is a settled question that some inquiry into the merits at the class certification stage is not only permissible but appropriate to the extent that the merits overlap the Rule 23 criteria."). Inquiry into the merits, however, is relevant only to ascertain satisfaction of "Rule 23 prerequisites." Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013). Plaintiff, as the party seeking class certification, "bears the burden of 'affirmatively demonstrat[ing] his compliance' with the Rule 23 requirements." In re Nexium Antitrust Litig., 777 F.3d at 18 (quoting Comcast Corp. v. Behrend, 569 U.S. at 33).

BACKGROUND

Succinctly stated, plaintiff alleges that defendants posted and enforced speed limit signs without following the procedures required to make them legally enforceable. His claims relate to

the speeding citations that he and other drivers received
pursuant to these signs on Hingham roadways.

Section two of Massachusetts General Laws chapter 85
("chapter 85") authorizes cities and towns to erect and maintain
traffic signs, but cautions that "'speed control signs may be
established only in accordance with the provisions of section
eighteen of chapter ninety.'"  (Docket Entry # 11, p. 3, ¶ 6)
(quoting chapter 85, section two) (emphasis omitted).  In turn,
section 18 of chapter 90 authorizes the highway division of the
Massachusetts Department of Transportation ("MassDOT") to make
special regulations regarding motor vehicle speeds albeit "[n]o
such regulation shall be effective until" erection of "signs,
conforming to standards adopted by the department."  Mass. Gen.
Laws ch. 90, § 18.  MassDOT adopted such standards in
promulgating the MassDOT Highway Division Procedures for Speed
Zoning on State and Municipal Roadways ("MassHwy Procedures").
(Docket Entry # 11, pp. 4-8, ¶ 8) (Docket Entry # 11-1).  The
MassHwy Procedures, in turn, states that section 18 "authorizes
the posting of numerical speed limits on all roadways in
Massachusetts" and that:

> The foundation for the actual posting of a speed limit is a
> thorough traffic engineering study.  After a study has been
> completed, a Special Speed Regulation is drafted and
> approved by the governing authority of the roadway, the
> Registry of Motor Vehicles and MassDOT.  All posted
> regulatory speed limit signs must adhere to this approval
> process.  If a speed limit is posted without this

procedure, it is in violation of Chapter 90, Section 18, and is therefore considered illegal and unenforceable.

(Docket Entry # 11-1, pp. 4-5).[5]  The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices ("MUTCD") explains the step-by-step process as follows:

> Of the special regulations adopted by municipalities under the provisions of Chapter 90, Section 18 of the General Laws, the most commonly used is the special regulation of the speed of motor vehicles.  Considerable data including speed observations and trial runs must be obtained by municipal officials, usually the Police Department.  The final determination is based upon the 85-percentile method, which is that speed at or below which 85% of the vehicles observed were actually traveling . . ..
>
> Procedures for Establishment of Legal Speed Zones
>
> (1) The municipality is to conduct proper studies and submit data to the Department . . ..
>
> (2) After the speed zones, proposed by the local authorities, are reviewed by the Department, they are returned to the municipality for formal adoption by the rule-making body.  During this time, the municipality is responsible for any and all hearings required for adoption.
>
> (3) Upon receipt of notice of formal adoption by the municipality, the Department, acting jointly with the Registry, will certify and approve.
>
> (4) Certified regulation is returned to municipality.
>
> (5) Official Speed Limit signs may then be installed in accordance with the specific provisions of the approved speed regulation.
>
> (6) The Special Speed Regulation is then enforceable against violators.

---

[5]  Page numbers here and elsewhere refer to the page number in the upper right hand corner of the docketed filing rather than the page number of the actual exhibit.

(Docket Entry # 11-2, pp. 11-12) (Docket Entry # 11, pp. 8-9, ¶ 10).

On September 28, 2011, a Hingham police officer issued the civil motor vehicle infraction ("CMVI") to plaintiff for speeding on Gardner Street "under the authority of Mass. Gen. L. ch. 90, § 18." (Docket Entry # 11, p. 12, ¶ 15) (Docket Entry # 11-3). The officer cited plaintiff for operating a vehicle at a rate of speed exceeding the posted speed limit of 30 m.p.h. (Docket Entry # 11-3). The officer appeared at a subsequent CMVI hearing and offered as evidence the citation, which operates as "prima facie evidence of the facts stated in the citation." (Docket Entry # 11, p. 13, ¶ 17) (Docket Entry # 11-3) (Docket Entry # 25-1, p. 4); see Mass. Gen. Laws ch. 90C, § 3(A)(4). The citation reflects that plaintiff was speeding in a posted 30 m.p.h. speed zone and has checked boxes corresponding to "radar," "posted," and "estimated." (Docket Entry # 11-3). A clerk-magistrate found plaintiff responsible, and he paid a $100 assessment. (Docket Entry # 11, pp. 13-14, ¶¶ 18-20) (Docket Entry # 11-5).

A January 2012 letter from a District Highway Director informed plaintiff's counsel, Zotos, that "the District's Records" showed no evidence that a special speed regulation "was ever issued" for Gardner Street. (Docket Entry # 11-9). Furthermore, minutes of an August 2015 meeting addressed by a

traffic committee of the Town of Hingham to defendants indicate there are 30 m.p.h. speed limit signs on Gardner Street:

> but there is no record of them . . . The signs which are currently posted are not permitted but are still enforceable.  The question is whether they are challenged in court, if it would[,] they would be found to be illegal and the Town might be sued.

(Docket Entry # 11-10, p. 2) (Docket Entry # 11, p. 17, ¶ 28) (emphasis omitted).

A 2012 "GPS Survey [of] Posted Speed Limits [for the] Town of Hingham" conducted by Zotos reflects that 66% of the speed limit signs surveyed under the town's jurisdiction "lacked a required Special Speed Regulation" ("Zotos Speed Study"). (Docket Entry # 11-8, pp. 1-2).  The study spans the time period of March 2 to 23, 2012, during which "Zotos conducted a visual and photographic GPS survey" of Hingham roadways and identified 60 "speed limit signs for which there was no record" in the town or MassDOT files of the issuance "of any Special Speed Regulations."  (Docket Entry # 11-8, pp. 2, 6-7).[6]  In an August 24, 2012 letter to the Board of Selectman, a MassDOT State Traffic Engineer notified the town that, upon review of MassDOT files, the files contained special speed regulations for five streets, none of which appear on table three in the Zotos Speed Study.  (Docket Entry # 11-16, p. 3) (Docket Entry # 11-8, pp.

---

[6]  As previously noted, page numbers refer to the page number of the filing as docketed.

6-7).  The letter recognizes the relief MassDOT may provide when notified of an unlawfully posted speed limit sign, namely, that the department may remove the sign.  (Docket Entry # 11-16, p. 2) (quoting chapter 85, section two); Mass. Gen. Laws ch. 90, § 18 ("Any sign, purporting to establish a speed limit, which has not been erected in accordance with the foregoing provisions may be removed by or under the direction of the department.").

In support of class certification, plaintiff filed 382 civil traffic citations issued by Hingham police officers from September 2011 to January 2018 on 25 Hingham roadways.[7]  (Docket Entry ## 17-1 to 17-25).  Plaintiff attaches the citations to an affidavit by Zotos in which Zotos attests to the veracity of various facts in the first amended complaint.  (Docket Entry # 17).  The citations all charge violations of section 18 based on posted speeds.  (Docket Entry # 17, p. 2, ¶ 5) (Docket Entry ## 17-1 to 17-25).  In a number of the citations, the officers' method of determining speed varies to include boxes checked as "clocked," "radar," "lidar," and/or "estimated" in addition to

---

[7]  Plaintiff filed another 16 citations for section 18 violations on various Hingham roadways that resulted in criminal applications or arrests in light of other charges in the citations.  (Docket Entry # 17, p. 5, ¶ 32) (Docket Entry # 17-26).  As an aside and not considered for purposes of class certification, the majority of the traffic citations postdate the Zotos Speed Study as well as the August 24, 2012 letter identifying the five streets at that time that had a special speed regulation.  (Docket Entry ## 17-1, 17-2, 17-4, 17-5, 17-7 to 17-11, 17-13 to 17-26).

"posted." (Docket Entry ## 17-1 to 17-26). The majority of the posted speed rates in the citations are for 30 m.p.h., although they also include 40 m.p.h. and 45 m.p.h. rates, and a number of the roadways have more than one posted speed limit sign. (Docket Entry ## 17-1 to 17-26). The rates of speed, largely within a 30 m.p.h. posted area, differ as well. For example, whereas one citation charges a motorist with traveling 40 m.p.h. in a 30 m.p.h. zone, another charges a different motorist with traveling 51 m.p.h. in a 30 m.p.h. zone. (Docket Entry # 17-9, p. 28) (Docket Entry # 17-14, p. 2). A number of the citations include charges for other driving offenses, including section 17 of chapter 90 ("section 17"). (Docket Entry ## 17-2 to 17-9, 17-11, 17-13 to 17-19, 17-22 to 17-26).

Separately, the first amended complaint, filed in March 2018, represents there are at least 26 speed limit signs "posted on the public roadways under the sole jurisdiction of the Town of Hingham" which do not have "approved special speed regulations on file with MassDOT." (Docket Entry # 11, pp. 17-18, ¶ 30) (citing Zotos Speed Study, Docket Entry # 11-8, pp. 6-7, listing signs without special speed regulations as of March 23, 2012). The first amended complaint further states that from September 28, 2011 to January 28, 2018, the Town issued 1,247 traffic citations on roadways in Hingham that did not have "approved special speed regulations on file with MassDOT."

(Docket Entry # 11, p. 19, ¶ 33(a)).  The discussion below

includes additional facts.

## DISCUSSION

The first amended complaint defines the putative class as

follows:

> Any person who received motor vehicle traffic
> citations for violation of a special speed regulation
> lawfully made under the authority of Mass. Gen. L. ch.
> 90, § 18, i.e., operating a vehicle at a rate of speed
> in excess of a Speed Limit sign (R2-1), where (in
> fact) there is no such approved special speed
> regulation, and who, by reason thereof, suffered or
> experienced an adverse legal consequence, including
> payment of an assessment, surcharge, cost or fee in
> disposition of the citation, or whose admission or
> finding of responsibility have [sic] been or may be
> counted against them in the future for the purposes of
> adversely affecting their driving record or automobile
> insurance premium, or all these things, from September
> 28, 2011, to the date of the judgment in this action.

(Docket Entry # 11, p. 35, ¶ 58).[8]  In order to allow class

certification, plaintiff must meet all four threshold

requirements under Rule 23(a), as well as at least one of the

requirements of Rule 23(b)(1), (2) or (3).  See Amchem Prods.,

Inc. v. Windsor, 521 U.S. 591, 613-14 (1997).  Plaintiff asserts

that the proposed class, in addition to meeting the requirements

---

[8]  The supporting memorandum to the class certification motion
truncates this definition.  (Docket Entry # 16).  The defendant
class members consist of the Selectman and various town and
state officials who erected, maintained, or enforced speed limit
signs that lacked a special speed regulation or "who, by reason
thereof, enjoyed or experienced a favorable legal consequence."
(Docket Entry # 11, p. 36, ¶ 60).

of Rule 23(a), satisfies both Rule 23(b)(2) and Rule 23(b)(3).
Finally, with respect to appointment of class counsel, plaintiff
contends that "Zotos is qualified, experienced and able to
litigate this case" pursuant to Rule 23(g). (Docket Entry # 16,
p. 13) (capitalization and emphasis omitted).

I.  Ascertainability

In addition to the foregoing requirements of Rule 23, it is
an implicit prerequisite to class certification that a putative
class be ascertainable; that is, "it must be 'administratively
feasible to determine whether a particular individual is a
member.'" Schonton v. MPA Granada Highlands LLC, 2019 WL
1455197, at *3 (internal citations omitted). It is not
necessary that every class member be identified, "but the class
must be sufficiently ascertainable to permit a court to 'decide
and declare who will receive notice, who will share in any
recovery, and who will be bound by the judgment.'" Id. at *3
(citing, inter alia, Crosby v. Soc. Sec. Admin. of the United
States, 796 F.2d 576, 580 (1st Cir. 1986)). Although plaintiff
need not specifically identify each proposed class member, he
must present "'stable and objective factors' at the outset of a
case" by which potential members can be deemed part of the
class. Id. at *3 (internal citation omitted); see In re Nexium
Antitrust Litig., 777 F.3d at 19; 1 William B. Rubenstein,
Newberg on Class Actions § 3:1 (5th ed. 2019).

Plaintiff submits "[a]scertainability is not a hurdle here, since traffic citations (of c. 90, § 18 violations) and special speed regulations (indicating authorized signs) are all recorded." (Docket Entry # 16, p. 7). The key characteristics of class members are receipt of citations for speeding in excess of posted speed limit signs "'lawfully made'" under section 18 when, in fact, there is no approved special speed regulation for the erected signs. (Docket Entry # 11, p. 35, ¶ 58). The citations all identify the Hingham roadway at issue, the individual's name, the posted speed, and the charged violation of section 18. The citations, taken together with records at MassDOT and/or the town documenting the multilayered process to erect a posted speed limit sign, provide objective criteria to ascertain class membership. The class is therefore sufficiently ascertainable. Accordingly, this court turns to the requirements of Rule 23(a).

## II.   Rule 23(a) Requirements

### A.   Numerosity

Under Rule 23(a)(1), a plaintiff seeking to certify a class must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no minimum number of plaintiffs necessary to establish numerosity, "'but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first

prong of Rule 23(a) has been met.'" <u>García-Rubiera v. Calderón</u>,

570 F.3d 443, 460 (1st Cir. 2009) (internal citations omitted).

Here, relying on the 382 traffic citations attached to the

Zotos affidavit, plaintiff maintains there are "hundreds of

plaintiff class members" which amount to a figure "almost ten

(10x) greater than the 40 person threshold." (Docket Entry #

16, pp. 6-7). Plaintiff's attempt to demonstrate numerosity is

not without flaws. Most obviously, it is possible that a number

of motorists received multiple citations──in which case the

number of putative class members may be lower than 382.

However, given the "low threshold for numerosity" and that a

plaintiff generally need only show that the "potential" number

of class members is greater than 40, plaintiff sufficiently

demonstrates numerosity.[9] <u>García-Rubiera v. Calderón</u>, 570 F.3d

at 460.

B.  <u>Commonality</u>

Turning to the second Rule 23(a) requirement, commonality,

a putative class can be certified only when "there are questions

---

[9]  Defendants argue that plaintiff fails to establish numerosity
because the 382 citations were issued on 24 separate streets in
the Town of Hingham, and each street contains multiple speed
limit signs. (Docket Entry # 25, pp. 14-15). Thus, defendants
contend that plaintiff's showing is "representative of twenty-
four separate groupings of plaintiffs." (Docket Entry # 25, p.
15). With respect to numerosity, the argument is not
convincing. Separately, defendants' failure to count Water
Street leads to 25 separate streets with 25 separate groupings.
(Docket Entry # 17-25).

of law or fact common to the class."[10]  Fed. R. Civ. P. 23(a)(2).

The "common questions of law or fact" that plaintiff identifies

include:

> a.  Whether Defendants' conduct of erecting, maintaining
>     and enforcing Speed Limit signs (R2-1) as alleged
>     herein violates Mass. Gen. L. ch. 90, § 18 (and set
>     forth in Mass. Gen. L. ch. 85, § 2), the "Procedures
>     for Speed Zoning on State and Municipal Roads", and
>     "The Massachusetts Amendments to the 2009 Manual on
>     Uniform Traffic Control Devices";
>
> b.  Whether Defendants' conduct of erecting, maintaining
>     and enforcing Advisory Speed plaques (W13-1P) as
>     alleged herein violates the "Procedures for Speed
>     Zoning on State and Municipal Roads" (as authorized by
>     Mass. Gen. L. ch. 90, § 18 and set forth in Mass. Gen.
>     L. ch. 85, § 2);
>
> c.  Whether Defendants' conduct of [restraining motorists,
>     leveling false section 18 charges, and] fabricating
>     false prima facie evidence of Speed Limit signs and
>     traffic citations as alleged . . . deprives Plaintiffs
>     of their property and liberty without due process of
>     law; and,
>
> d.  Whether the lack of any evidentiary proof requirement
>     under Mass. Gen. L. ch. 90C, § 3(A)(4) or Mass. Gen.
>     L. ch. 90, § 17, or both of these, pertaining to
>     whether a Speed Limit sign (R2-1) has been duly
>     established upon any way in accordance with the
>     provisions of Mass. Gen. L. ch. 90, § 18 (i.e., a
>     special speed regulation), deprives Plaintiffs of their
>     property and liberty without due process of law.

(Docket Entry # 11, pp. 37-38, ¶ 63) (Docket Entry # 16, p. 8).

---

[10]  "It is well settled that the requirement of 'common questions
of law or fact' in Rule 23(a) is disjunctive; that is, *either* a
question of law *or* a question of fact will suffice."  1 William
B. Rubenstein, <u>Newberg on Class Actions</u> § 3:21 (5th ed. 2019)
(emphasis in original).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'  This does not mean merely that they have all suffered a violation of the same provision of law." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-350 (2011) (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. at 157).  To satisfy commonality, putative class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution——which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350.

> What matters to class certification . . . is not the
> raising of common "questions"—even in droves—but rather,
> the capacity of a class-wide proceeding to generate common
> *answers* apt to drive the resolution of the litigation.
> Dissimilarities within the proposed class are what have the
> potential to impede the generation of common answers.

Id. at 350 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. REV. 97, 132 (2009) (emphasis in original)).  Furthermore, "[t]he commonality test is more qualitative than quantitative, and thus, there need be only a single issue common to all members of the class." 1 William B. Rubenstein, Newberg on Class Actions § 3:20 (5th ed. 2019); see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 359 ("[F]or purposes of Rule 23(a)(2), '"[e]ven a single [common] question"' will do.").  "[T]he requirement is easily met in most

cases." 1 William B. Rubenstein, <u>Newberg on Class Actions</u> §

3:20 (5th ed. 2019).

In the case at bar, plaintiff contends that commonality is

satisfied because all putative class members suffered the same

injury, namely, "the Selectmen's same enforcement of

unauthorized speed limit signs by issuance of traffic

citations." (Docket Entry # 16, p. 8). Defendants point out

that a key aspect of plaintiff's theory of relief is "that the

law requires a separate engineering study" for each speed sign.

(Docket Entry # 25, p. 16). While this is true, it is not fatal

to commonality.

> <u>Dukes</u> makes clear that claims of harm arising from *a truly*
> *common source*, such as illegal bias arising from a
> particular supervisor, can provide the common contention
> required for a class action. Even where that common
> contention is shown . . . individual questions will of
> course remain as to how to remedy the harm to a particular
> [class member] . . . But those inquiries go not to
> commonality (since clearly, these are not common questions
> of fact) but to predominance.

<u>George v. Nat'l Water Main Cleaning Co.</u>, 286 F.R.D. 168, 175 (D.

Mass. 2012) (emphasis added); <u>see</u> <u>also</u> <u>Crowe v. Examworks, Inc.</u>,

136 F. Supp. 3d 16, 47 (D. Mass. 2015). Here, all members of

the class can trace their injury to a common source:

defendants' alleged noncompliance with state laws and MassDOT

standards, arising through their failure to conduct speed

studies for Hingham roadways with posted speed limits or

advisory speed limits leading to purportedly false charges and

illegal enforcement of the posted and advisory speed limits.
This suffices to establish commonality.

C.  Typicality

Next, a plaintiff seeking to certify a class must establish
that "the claims or defenses of the representative parties are
typical of the claims or defenses of the class."  Fed. R. Civ.
P. 23(a)(3).  "'The central inquiry . . . is whether the class
representatives' claims have the same essential characteristics
as the claims of the other members of the class.'"  Barry v.
Moran, Civil Action No. 05-10528-RCL, 2008 WL 7526753 at *11 (D.
Mass. May 7, 2008) (quoting McLaughlin v. Liberty Mut. Ins. Co.,
224 F.R.D. 304, 310 (D. Mass. 2004)).  Typicality may be
satisfied when putative class claims "'arise[] from the same
event or practice or course of conduct that gives rise to the
claims of the other class members, and . . . are based on the
same legal theory.'"  García-Rubiera v. Calderón, 570 F.3d at
460 (internal citations omitted).  Typicality "ensure[s] that
the plaintiff's interests are 'aligned with those of the
represented group, [so that] in pursuing his own claims, the
named plaintiff will also advance the interests of the class
members.'"[11]  1 William B. Rubenstein, Newberg on Class Actions §

---

[11]  To the extent plaintiff seeks certification of putative
federal claims, his lack of a viable federal claim renders his
claims not typical of the putative class members' federal
claims.  "[T]he typicality requirement demands that a member of

23

3:29 (5th ed. 2019) (citations omitted); accord Schonton v. MPA
Granada Highlands LLC, 2019 WL 1455197, at *7 (typicality
ensures that "'named plaintiffs, in presenting their case, will
necessarily present the claims of the absent plaintiffs'")
(internal brackets and citations omitted).  Like commonality,
typicality serves as a "guidepost[] for determining whether
under the particular circumstances maintenance of a class action
is economical and whether the named plaintiff's claim and the
class claims are so interrelated that the interests of the class
members will be fairly and adequately protected in their
absence.'"  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 349 n.5.

---

the class be the class representative."  1 William B.
Rubenstein, Newberg on Class Actions § 3:28 (5th ed. 2019); see
also E. Texas Motor Freight Sys. Inc. v. Rodriguez, 431 U.S.
395, 403 (1977) ("this Court has repeatedly held, a class
representative must be part of the class and 'possess the same
interest and suffer the same injury' as the class members");
accord Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 625-26
(1997) (quoting Texas Motor, 431 U.S. at 403); W. Virginia ex
rel. McGraw v. CVS Pharmacy, Inc., 646 F.3d 169, 176 (4th Cir.
2011) ("class action is an action filed by an individual *as a
member of a class* and whose claim is typical of the class
members' claims") (emphasis in original); Chisholm v. U.S.
Postal Serv., 665 F.2d 482, 493 (4th Cir. 1981); see generally
White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 878 (6th
Cir. 2012); Wiesmueller v. Kosobucki, 513 F.3d 784, 787 (7th
Cir. 2008) ("decision that the claim of the named plaintiffs
lacks merit ordinarily" disqualifies plaintiff "as proper class
representative[]").  In the alternative, the putative federal
class claims also fail certification for the same reasons the
state law putative class claims fail.

(quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. at 157–
158, n.13).

In the case at bar, plaintiff argues that his claims "are
typical of, indeed identical to" those of the other class
members, all of which "involve the Selectmen's same misconduct
of erecting, maintaining and enforcing unauthorized speed limit
signs by issuance of traffic citations." (Docket Entry # 16, p.
10). Plaintiff asserts that typicality is met because "[t]he
systemic failure of the Selectmen to obey statutes and
regulatory standards exposes everyone to harm." (Docket Entry #
16, p. 11). Defendants argue that "the evidence underlying the
posting of each sign must be separately analyzed to determine
whether the sign was posted with or without a traffic
engineering study." (Docket Entry # 25, pp. 17-18).

At a general level, the claims emanate from the purportedly
illegal conduct of erecting and enforcing speed limit signs that
were unauthorized under section 18. The essential
characteristics of the claims, however, arise from the legality
of each individual sign and defendants' course of conduct or
practice in erecting and enforcing that sign. Plaintiff's
interest centers on presenting the illegality of the 30 m.p.h.
speed limit sign on upper Gardner Street to show his claims that
defendants' conduct was ultra vires. Even assuming these claims
typify the claims of other putative class members who received a

citation under the same 30 m.p.h. sign on Gardner Street,[12] however, such claims are not typical of claims by putative class members who received citations elsewhere, each of whom would require a separate inquiry into the legality of the sign corresponding to his or her citation.[13]  Again, the class includes individuals cited on 25 separate roadways (Docket Entry # 17-1 to 17-26) (Docket Entry # 17, ¶¶ 6-32) under different speed limit signs subject to different erection and enforcement proceedings which, in turn, evidence (or do not evidence) each sign's illegally.  Thus, plaintiff's claims do not "'arise[] from the same event'"——posting and enforcing a sign on Gardner Street——"'that gives rise to the claims of other class members.'"  García-Rubiera v. Calderón, 570 F.3d at 460 (internal citations omitted).  Nor do they arise from the same practice of repeatedly enforcing that sign against 13 other drivers.  (Docket Entry # 17-14).  In other words, it is not likely that plaintiff, in pursuing his claims regarding the ultra vires illegality of the posted speed limit on upper

---

[12]  The citations attached to the Zotos affidavit include 13 citations against drivers for violating a 30 m.p.h. speed limit sign on Gardner Street.  (Docket Entry # 17-14).  A duplicate citation for Gardner Street appears in another exhibit.  (Docket Entry # 17-26, p. 14) (Docket Entry # 17-14, p. 10).
[13]  Here again, if more than one putative class member received a citation for speeding in excess of the same posted sign, then the claims of these members overlap each other but are still not typical of plaintiff's claims under a different sign.

Gardner Street, will advance the interests of the putative class members challenging different speed limit signs posted at different times on different roadways and supported, if at all, by a speed study.  Consequently, typicality is lacking.

D.  Adequacy of Representation

Because plaintiff fails to demonstrate typicality, it is unnecessary to consider the fourth Rule 23(a) requirement at length.  It suffices to state that at this juncture in the proceedings, this court is not aware of conflicts between plaintiff and the proposed class members.

II.  Rule 23(b) Requirements

Even if plaintiff could show that all four requirements of Rule 23(a) are satisfied——which he has not done——he would still have to show that the proposed class satisfies one of the requirements of Rule 23(b)(1), Rule 23(b)(2), or Rule 23(b)(3).  Plaintiff submits that the putative class meets the requirements of Rule 23(b)(2) and Rule 23(b)(3).  (Docket Entry # 16, p. 14).  "Alternatively, he seeks certification of a declaratory and injunctive relief subclass under Rule 23(b)(2), and a damages subclass under Rule 23(b)(3).  If the court does not certify a damages subclass under Rule 23(b)(3), then he instead seeks certification of a liability-only subclass under Rule 23(b)(3)."  (Docket Entry # 16, p. 14) (citations omitted).

A.  Rule 23(b)(2)

Plaintiff argues that Rule 23(b)(2) certification is appropriate because defendants "have acted and refused to act on grounds generally applicable to the entire plaintiff class, so that final declaratory or injunctive relief would be appropriate to the plaintiff class as a whole, i.e., they have erected, maintained and enforced unauthorized speed limit signs with arbitrarily low speed limits." (Docket Entry # 16, p. 15). Plaintiff maintains that "Rule 23(b)(2) is also appropriate, because [he] predominantly seeks declaratory and injunctive relief that 'would benefit the entire class.'" (Docket Entry # 16, p. 16) (citation omitted). He explains that "[e]ven though monetary relief is also sought, these relatively small individual amounts are more or less incidental to the declaratory and injunctive relief." (Docket Entry # 16, p. 16). Defendants respond that the injunctive and declaratory relief plaintiff seeks is not answered in a single question or by a single injunction. Rather, each sign raises separate legal and factual issues suitable, if at all, for individualized injunctive or declaratory relief. (Docket Entry # 25, p. 19). They also submit that the putative class members seek monetary damages and that Rule 23(b)(2) does not authorize individualized monetary awards.

Under Rule 23(b)(2), "the party opposing the class" must have "acted or refused to act on grounds that apply generally to

the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As emphasized by the Supreme Court in Wal-Mart:

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 360-61 (emphasis in original).[14] Extensively amended in 1966, "the Rule reflects a series of decisions involving challenges to racial segregation-conduct that was remedied by a single classwide order." Id. at

---

[14] Wal-Mart, an employment discrimination case, foreclosed "ex-employee standing to sue for injunctive and declaratory relief" under Rule 23(b)(2). Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d 113, 121 (S.D.N.Y. 2012); see 2 William B. Rubenstein, Newberg on Class Actions § 4:32 (5th ed. 2019) (noting, in context of employment discrimination case seeking to certify class of past and current employees, that because "the injunctive relief would appear to affect only current, and not former, employees, it would not apply to the class as a whole and thus the class would seem to fall without the language of Rule 23(b)(2). Indeed, the Supreme Court's decision in the *Wal-Mart* case appears to foreclose (b)(2) certification on this ground.") (internal citations omitted); see also In re Nexium (Esomeprazole) Antitrust Litig., 297 F.R.D. 168, 174 (D. Mass. 2013) (enjoining "reverse payment agreements at the conclusion of a March 2014 trial . . . provides but little relief when the reverse payment agreements are set to expire just three months later, in May 2014" and, given "such limited injunctive relief, especially where the primary relief sought is monetary damages," Rule 23(b)(2) class certification "is inappropriate"), *aff'd sub nom.* In re Nexium Antitrust Litig., 777 F.3d 9 (1st Cir. 2015).

361; see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614
(1997). "The key to the (b)(2) class is 'the indivisible nature
of the injunctive or declaratory remedy warranted——the notion
that the conduct is such that it can be enjoined or declared
unlawful only as to all of the class members or as to none of
them.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 360
(internal citation omitted).

As indicated, Rule 23(b)(2) certification is also not
appropriate when monetary claims are more than incidental. See
id. at 360 (holding that claims for monetary relief "may not" be
certified under Rule 23(b)(2) "at least where (as here) the
monetary relief" of back pay "is not incidental to the
injunctive or declaratory relief"). Here, the monetary damages
for plaintiff and putative class members consist of a refund of
the fines, costs, and surcharges for the citation based on the
illegal and unenforceable posted and advisory speed limit signs.
(Docket Entry # 11, p. 54, ¶ 13). Whereas a number of citations
do not impose a fine, a substantial number of other citations
show fines ranging from $150 to $430. (Docket Entry # 17-1 to
17-25). The monetary damages sought also encompass
"compensatory damages," including "actual, consequential and
incidental damages" (Docket Entry # 11, p. 54), a description
that would, for example, include increases in automobile
insurance premiums. See generally Police Dep't of Salem v.

30

<u>Sullivan</u>, 953 N.E.2d 188, 190 (Mass. 2011) (noting that payment of motor vehicle fine under chapter 90C, section 3(A)(3), operates as final disposition and "affects automobile insurance premiums"); Mass. Gen. Laws ch. 90C, § 3(A)(3).  These and other compensatory damages for each putative class member are not incidental to the injunctive and declaratory relief plaintiff identifies.  (Docket Entry # 16, p. 14) (Docket Entry # 11, p. 53).  Even assuming defendants' conduct can be declared unlawful as to all putative class members or none at all, certification under Rule 23(b)(2) fails.  <u>See</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. at 362 ("[I]ndividualized monetary claims belong in Rule 23(b)(3).").  Hence, because the monetary claims are not merely incidental to the injunctive and declaratory relief, Rule 23(b)(2) certification does not apply.

B.  <u>Rule 23(b)(3)</u>

Rule 23(b)(3) allows certification when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In assessing predominance:

> Issues are characterized as common or individual primarily
> based on the nature of the evidence:  If "the members of a
> proposed class will need to present evidence that varies

31

> from member to member, then it is an individual question."
> If "the same evidence will suffice for each member to make
> a prima facie showing," or if the issue is "susceptible to
> generalized, class-wide proof," then it is a common issue.

2 William B. Rubenstein, <u>Newburg on Class Actions</u> § 4:50 (5th ed. 2019) (citations and bullet points omitted). "Common questions do not predominate if 'a great deal of individualized proof' would need to be introduced or 'a number of individualized legal points' would need to be established after common questions were resolved." 2 William B. Rubenstein, <u>Newberg on Class Actions</u> § 4:50 (5th ed. 2019) (citations omitted). As compared with Rule 23(a)'s commonality requirement, "'the predominance criterion is far more demanding.'" <u>Schonton v. MPA Granada Highlands LLC</u>, 2019 WL 1455197, at *10 (quoting <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. at 624).

Plaintiff argues that common questions of law "are dispositive of the issue of liability. Evidence exists which proves the factual elements of the case on a simultaneous, classwide basis, according to plaintiff. This includes records of speed limit signs, special speed regulations, and individual traffic citations indicating c. 90, ¶ 18 violations and street locations," according to plaintiff. (Docket Entry # 16, p. 17).

To the contrary, establishing common evidence to show liability does not predominate. <u>See</u> <u>generally</u> <u>Gintis v.</u>

<u>Bouchard Transp. Co., Inc.</u>, 596 F.3d 64, 67 (1st Cir. 2010)

(focus on remand "will be on the plaintiffs' claim that common

evidence will suffice to prove injury, causation and

compensatory damages" for "substantial portions of the claims"

by putative class members).  Rather, individualized "'questions

will overwhelm common ones.'"  <u>In re Nexium Antitrust Litig.</u>,

777 F.3d at 21 (internal citations and emphasis omitted).  Here,

plaintiff seeks certification of a class which would include

members cited for speeding violations on 25 separate roadways, a

number of which contain multiple speed limit signs.[15]  (Docket

Entry # 16, p. 1) (Docket Entry # 17, pp. 2-5, ¶¶ 7-32) (Docket

Entry ## 17-1 to 17-26).  Putative class members were cited on

25 separate roadways, at numerous speed limit signs, for

traveling various speeds.  The only way to establish defendants'

liability to each class member would be to examine each one

individually, given that each sign's legality requires a

separate and independent engineering study.  Plaintiff's

contention that the claims "arise from the Selectmen's

standardized conduct, procedures and policies of erecting,

maintaining and enforcing speed limit signs" and that "[t]here

is no dispute that the Selectmen have uniformly engaged in the

---

[15]  Again, plaintiff's traffic violation relevant to the case at
bar is a single citation for speeding in excess of a "30 m.p.h.
Speed Limit sign posted on Gardner Street." (Docket Entry # 11,
p. 12, ¶ 15).

described conduct" (Docket Entry # 16, p. 17) overlooks the
myriad of individualized legal and factual issues that
predominate defendants' erection of each sign and the
enforcement of each sign regarding each putative class member.
Thus, after resolving and establishing the general procedure for
defendants to erect a posted speed limit sign on a Hingham
roadway under section 18, "'a great deal of individualized
proof,'" 2 William B. Rubenstein, Newberg on Class Actions §
4:50 (5th ed. 2019) (citations omitted), becomes necessary to
resolve the legal and factual issues regarding the erection of
each posted speed limit sign and, more specifically, whether the
town adhered to the process set out in the MassHwy Procedures or
the MUTCD with respect to each sign.  Notably, "common
questions" do not "predominate if, '"as a practical matter, the
resolution of an overarching common issue breaks down into an
unmanageable variety of individual legal and factual issues."'"
2 William B. Rubenstein, Newberg on Class Actions § 4:50 (5th
ed. 2019) (internal ellipses, brackets and citations omitted).

     In formulating a "'prediction as to how'" the "'issues will
play out,'" In re New Motor Vehicles Canadian Exp. Antitrust
Litig., 522 F.3d at 25 (internal citation omitted), determining
liability will require discrete inquiries as to each member
concerning the sign at which that member was cited.  To provide
an example, the erection date of each sign as predating or

postdating the imposition of a traffic engineering study as a requirement presents individualized issues, as pointed out by defendants.  (Docket Entry # 25, p. 18).

Further, the fact that a sign is not posted under section 18 with an approved speed regulation, as plaintiff suggests, does not necessarily establish defendants' liability to the putative class member under the state law claims, which was exactly the case with Zotos' similar individual ultra vires state law claims in Zotos II.  See Zotos v. Town of Hingham, et al., Civil Action No. 13-13065-DJC (D. Mass. Mar. 25, 2016). Additional divergence of proof will arise to ascertain whether a class member was, like Zotos, traveling in a section-17 posted area such as a school zone, business district, or thickly settled area.  To place this divergence of proof in context, a brief explanation of the merits is helpful.[16]

As explained in Zotos II:

An officer "may be said to act ultra vires only when he acts without any authority whatever."  New Hampshire Ins. Guar. Assen v. Markem Corp., 424 Mass. 344, 353 (1997) (internal quotation marks omitted) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984)); cf. Entergy Nuclear Generation Co. v. Dep't of Envtl. Prot., 459 Mass. 319, 332 (2011) (explaining that agency's actions were not ultra vires because the authority to take those actions was implied by the governing statute).  Only a procedure that has "no authority" in the relevant statutes, considering both the authority expressly and

---

[16]  This court is examining the merits only to ascertain the predominance of the issues under Rule 23(a) and *not* to make a free-standing merits determination.

impliedly granted, is ultra vires.  Morey v. Martha's Vineyard Comm'n, 409 Mass. 813, 818 (1991).

Zotos v. Town of Hingham, et al., Civil Action No. 13-13065-DJC (D. Mass. Mar. 25, 2016); see also Alliance to Protect Nantucket Sound, Inc. v. Dep't of Pub. Utilities, 959 N.E.2d 413, 431 (Mass. 2011) (noting, in context of addressing state agency's ultra vires conduct, that statute "'taken as a whole'" shapes agency's powers, including powers "'necessarily or reasonably implied'") (internal citations omitted); Souza v. Sheriff of Bristol Cty., 918 N.E.2d 823 (Mass. 2010).  For the ultra vires claims to survive, the conduct of the putative defendant class must be "without any authority whatsoever."  Id.

Both section 17 and section 18 pertain to motor vehicle speed limits and traffic signs.  Zotos v. Town of Hingham, et al., Civil Action No. 13-13065-DJC (D. Mass. Mar. 25, 2016); see generally Alliance to Protect Nantucket Sound, Inc. v. Dep't of Pub. Utilities, 959 N.E.2d at 431 ("consider[ing] both the authority specifically conferred on the department by § 83 and that conferred more generally by the department's enabling statutes" in assessing claim of "ultra vires administrative action").  Captioned "Speed limits," section 17 sets out the fundamental and overarching command that, "No person operating a motor vehicle on any way shall run it at a rate of speed greater than is reasonable and proper . . .."  Mass. Gen. Laws ch. 90, §

17.  Section 18, in turn, pertains to establishing a "special regulation as to the speed of a motor vehicle" and allows the posting of a regulatory speed limit sign if "certain procedures are followed." Hingham Police Dep't v. Zotos, 2012 WL 1689189, at *1.  "If a speed limit is posted in violation of § 18, it cannot [and does not] mean that there is no speed limit whatsoever for that area." Id.  "In such an instance, § 17 is the fallback position as to what is reasonable and proper." Id. Simply stated, "if a speed limit is posted in violation of § 18, § 17 controls." Id.; Zotos v. Town of Hingham, et al., Civil Action No. 13-13065-DJC (D. Mass. Mar. 25, 2016) (applying this principle to ultra vires claims).  At a minimum, section 17's reasonable and proper speed limit controls over section 18 illegal and legally posted speed limits.  See Cambridge Police Dep't v. Olenick, No. 09-P-1845, 2010 WL 2609456, at *1 (Mass. App. Ct. July 1, 2010) (in both "posted and unposted areas . . ., the police have to establish that a defendant was driving 'at a rate of speed greater than is reasonable and proper'") (unpublished); accord Commonwealth v. Diviacchi, No. 13-P-1020, 2014 WL 2719698, at *1 (Mass. App. Ct. June 17, 2014) ("the issue under § 17 as well as under § 18 is whether the defendant was driving 'at a rate of speed greater than is reasonable and

proper'") (quoting section 17) (unpublished).[17]  Indeed, the

MassHwy Procedures, upon which plaintiff relies, state that

section 17's reasonable and proper speed is "the fundamental

speed law" and that a special speed *regulation*, i.e., one

erected under section 18, does not supersede it.  (Docket Entry

# 11-1, p. 5) ("reasonable and proper" is "fundamental speed

law" and "[n]o form of regulation . . . can supersede it"); see

Natick Police Dep't v. Labutti, No. 07-P-1785, 2008 WL 5047854,

at *1-2 (Mass. App. Ct. 2008) (quoting this language from

MassHwy Procedures and finding defendant's 51 m.p.h. speed not

"reasonable and proper" under section 17 and also examining

argument that defendant complied with posted regulatory 50

m.p.h. speed) (unpublished).

Hence, given the foregoing, even if the section 18-erected

sign is illegal as to a putative class member cited for a

section 18 violation, section 17 controls.  Thus, the board of

selectmen putative class defendants do not act ultra vires as to

a putative class plaintiff traveling in excess of a reasonable

and proper speed limit in an area with a section 17-erected

---

[17]  This court cites and relies on unpublished decisions only for
their persuasive value and not as binding precedent.  Ameriprise
Fin. Servs., Inc. v. Brady, 325 F. Supp. 3d 219, 230 (D. Mass.
2018) (stating that unpublished decision cited by the defendant
"is a summary decision issued by the [Massachusetts] Appeals
Court pursuant to Rule 1:28 and consequently may be cited only
for persuasive value, but not as binding precedent").

traffic sign.  See Zotos v. Town of Hingham, et al., Civil

Action No. 13-13065-DJC (D. Mass. Mar. 25, 2016).  Having

analyzed this underlying liability solely to ascertain

predominance, additional divergence of proof will arise for

putative class members traveling in section-17 designated school

zones, business districts, or thickly settled areas.  Further

divergence results in determining whether the rates of speed of

these putative class plaintiffs exceed the reasonable and proper

speed for that designated area.

In short, defendants' liability to putative class members

therefore presents "'individual question[s]'" because "'the

members of a proposed class will need to present evidence that

varies from member to member.'"  2 William B. Rubenstein,

Newberg on Class Actions § 4:50 (5th ed. 2019) (citations

omitted).  Indeed, defendants' liability cannot be a "common

issue" because "'the same evidence will [not] suffice . . . to

make a prima facie showing'" and because the issue is not

"'susceptible to generalized, class-wide proof.'"  Id. § 4:50

(citations omitted).  Plaintiff nevertheless asserts that

evidence exists which supports the "factual elements of the case

on a simultaneous, classwide basis," such as the "records of

speed limit signs."  (Docket Entry # 16, p. 17).  The fact

remains, however, that each class member (or each group of class

members cited under a single sign) will rely on different

evidence to prove the illegality of the sign that led to the ticket(s) at issue.  Moreover, in the case of putative class members traveling in section-17 posted areas, the proof will likely entail their reasonable and proper rate of speed as exceeding the speed for that designated area.  In sum, because "'a great deal of individualized proof' would need to be introduced," common "questions do not predominate."  2 William B. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2019).

Turning to superiority, plaintiff submits this "is a classic case with relatively small recoveries, in which the small amount of individual monetary damages makes the retention of counsel on an individual basis prohibitively expensive." (Docket Entry # 16, p. 18).  Motorists cited for traffic violations lack the incentive to litigate claims that only generate small recoveries, according to plaintiff.  He also quotes language from an SJC decision in which the court held that a decision to pay a traffic citation cannot be used as an admission at a later civil trial.  (Docket Entry # 16, p. 18) (quoting LePage v. Bumila, 552 N.E.2d 80, 82 (Mass. 1990)).  As stated in LePage, "mount[ing] a judicial challenge to a traffic citation takes time and money (almost certainly exceeding the fine), and often involves a great deal of aggravation.  In the context of a $40 noncriminal fine, those factors bear much greater weight than the righteousness of one's cause."  Id.

Plaintiff additionally asserts that "remedies against government officials" are replete with "fictional explanations," and a putative class member does not necessarily have the expertise to pursue such claims. (Docket Entry # 16, p. 19). According to plaintiff, a class action will avoid individual, "[p]iecemeal litigation," which imposes a "burden on the courts" and creates a "risk of inconsistent results." (Docket Entry # 16, p. 19).

Defendants point out that Massachusetts provides an efficient and inexpensive method to challenge speeding citations, namely, the process laid out in section three of chapter 90C. They point out that both Zotos and plaintiff fully availed themselves of that process. (Docket Entry # 25, p. 20). Zotos challenged the failure to comply with section 18 procedures to post the 30 m.p.h. speed limit sign on Gardner Street throughout his state court appeal of the clerk-magistrate's decision finding him responsible. Neither Zotos nor plaintiff were successful. Defendants additionally contend that certifying a class for 382 motorists cited for section 18 violations based on theories "repeatedly rejected" is both "clumsy and inefficient." (Docket Entry # 25, p. 20).

In assessing superiority, factors this court considers include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).[18]  As evidenced by the traffic citations plaintiff submits, putative class members previously litigated their traffic citations before a clerk-magistrate or other hearing officer thus evidencing some desire to control their own litigation.  See 2 William B. Rubenstein, Newberg on Class Actions § 4:70 (5th ed. 2019) (citing advisory committee's comment as implying that "other pending litigation is evidence that individuals have an interest in controlling their own litigation") (emphasis omitted).  It is unclear, however, if these prospective class members pursued an appeal and, if so, whether they raised the claims proposed for class certification. Moreover, it is the putative class members' interest in controlling the litigation of the putative class claims that warrants consideration.  Where, as here, each putative class member's claim is small, the putative class member is likely to have far less interest in controlling his or her own litigation

_____

[18]  These factors are also relevant to the predominance inquiry. Fed. R. Civ. P. 23(b)(3).  For instance, the potential problems managing the varying issues and proof relative to each of the signs at issue in each of the traffic citations militated against finding predominance.

of the matter.  See In re Dial Complete Mktg. and Sales Practices Litig., 312 F.R.D. 36, 57 (D.N.H. 2015) ("'[g]iven the size of the claims, individual members have virtually no interest in individually controlling the prosecution of separate actions'") (quoting In re Hannaford Bros., 293 F.R.D. 21, 33–34 (D. Me. 2013)).

Notably, "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"  Amchem Prods., Inc. v. Windsor, 521 U.S. at 617 (internal citation omitted).  As similarly expressed by the First Circuit in Smilow, "[t]he core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation."  Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 41 (1st Cir. 2003) (citations omitted).  In these so-called "'negative-value'" suits, the class method is often the only viable method because "the value of the claim is dwarfed by the costs of adjudicating it."  2 William B. Rubenstein, Newberg on Class Actions § 4:87 (5th ed. 2019) (internal citations omitted).

Here, the core purpose of the class action method of vindicating small claims that are otherwise too small to pursue is served by adhering to the class method but it is also served

in the streamlined procedures provided in chapter 90C, section three, which gives defendants the opportunity to raise issues of law to the appellate courts. See generally Commonwealth v. Mongardi, 522 N.E.2d 984, 987 (Mass. App. Ct. 1988) ("noncriminal method of enforcement permitted by the statute is essentially a sensible, simple, administrative method of making necessary traffic rules effective, without clogging the courts, causing undue public inconvenience and resentment, or depriving any citizen of full opportunity at his option for a judicial determination of facts") (internal citations, brackets, ellipses, and quotation marks omitted). In *comparing* the two methods, however, the relatively small recoveries coupled with the likely need to appeal a clerk-magistrate's finding of responsibility to obtain a more complete resolution of issues of law in an individualized chapter 90C procedure reduces the incentive to litigate the claims individually. Accordingly, the class method provides the *superior* means to adjudicate the controversy. See 2 William B. Rubenstein, Newberg on Class Actions § 4:85 (5th ed. 2019) ("the 'superior' moniker implies that the search is for the best of the lot") (citations omitted); see generally In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534 (3d Cir. 2004) ("individual consumer class members have little interest in 'individually controlling the prosecution' . . . because each consumer has a very small claim

in relation to the cost of prosecuting a lawsuit") (internal citation omitted).  In sum, the strong absence of predominance coupled with the lack of typicality foreclose certification under Rule 23(b)(3) notwithstanding the superiority given the small monetary damages as well as other concerns.

Defendants also argue that a number of the putative class members' claims fail because they are untimely under the applicable three-year statute of limitations in Massachusetts for tort and ultra vires claims.  (Docket Entry # 25, p. 13) (citing Mass. Gen. Laws ch. 260, § 2A).  They do not tie this argument, which appears in their opposition to class certification, to any particular Rule 23(a) or 23(b) factor.[19]

Differences in the application of the same statute of limitations to class members' claims are relevant but not automatically fatal to class certification.  See generally Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000).  Specifically, "'possible differences in the application of a statute of limitations to individual class members . . . does not preclude certification of a class action so long as the

---

[19] To the extent the argument seeks a merits determination of the timeliness of putative class members' claims, class certification is not a merits determination, and merits questions are considered "only to the extent . . . they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. at 466.

45

necessary commonality and, in a 23(b)(3) class action,
predominance, are otherwise present.'" Id. at 296 (citations
omitted). Whereas Mowbray involved the more complex and
divergent application of different statutes of limitations in
effect in different states, the decision recognizes that
differences in the application of a statute of limitations
warrants consideration, id., and cases apply the principle in
Mowbray to differences in applying the same statute of
limitations to different class members. See, e.g., In re Celexa
and Lexapro Mktg. and Sales Practices Litig., 325 F.R.D. 529,
540 (D. Mass. 2017) (noting that plaintiffs did not show "common
issues predominate with respect [to] the statute of limitations
defenses," albeit in context of applying discovery rule). As to
predominance in the case at bar, the differences in the statute
of limitations for each putative class member's claims are
discrete and highly unlikely to pose difficulties in managing a
class action. As to numerosity, the three year statute of
limitations may reduce the number of class members but that
number still exceeds 40 by a comfortable margin. In light of
the above and the brevity of defendants' contention regarding
the statute of limitations, defendants' argument is not
convincing in the context of this motion.

C. Alternative Certification Arguments

46

As an alternative to certification under Rule 23(b)(2) or
Rule 23(b)(3), plaintiff summarily states that:

> he seeks certification of a declaratory and injunctive
> relief subclass under Rule 23(b)(2),[20] and a damages
> subclass under Rule 23(b)(3).  See Fed. R. Civ. P. 23(c)(4)
> & (5).  If the Court does not certify a damages subclass
> under Rule 23(b)(3), then he instead seeks certification of
> a liability-only subclass under Rule 23(b)(3).  Id.

(Docket Entry # 16, p. 14).  At the end of the argument section

in the motion for class certification, plaintiff repeats the

option that:

> the Court may choose to separate claims or issues within
> the complaint, and thereby specify and certify a damages
> subclass under Rule 23(b)(3).  See Fed. R. Civ. P. 23(c)(4)
> & (5).  If the Court declines to certify a damages subclass
> under Rule 23(b)(3), then it may instead certify a
> liability-only subclass under Rule 23(b)(3).

(Docket Entry # 16, p. 20).  He provides no developed argument

to support these three subclasses or any analysis regarding why

such subclass certification is appropriate and satisfies Rule

23.  Plaintiff therefore fails in his burden to "'affirmatively

demonstrate his compliance' with Rule 23" regarding these

proposed subclasses.  Comcast Corp. v. Behrend, 569 U.S. at 33

(internal citation omitted); see, e.g., Riva v. Ashland, Inc.,

Civil Action No. 09-12074-DJC, 2011 WL 6202888, at *12 (D. Mass.

---

[20]  Plaintiff repeats this statement later in the filing, again
citing Fed. R. Civ. P. 23(c)(4) and (5).  (Docket Entry # 16, p.
17).

Dec. 13, 2011) (plaintiff's summary presentation to certify

class under Rule 23(c)(5) did not satisfy his burden).

IV.  Rule 23(g) Appointment of Class Counsel

Because plaintiff fails to establish the requisite elements

for class certification, it is unnecessary to consider

plaintiff's argument for the appointment of Zotos, who prepared

and authored the Zotos speed study, as class counsel.  (Docket

Entry # 16, pp. 13-14).

CONCLUSION

In accordance with the foregoing discussion, the motion for

class certification (Docket Entry # 16) is **DENIED**.

    /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge